ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA.
KNOLL, Justice.
_JjThis matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (“Commission”), pursuant to La. Const. Ann. art. V, § 25(C), that Wayne G. Cresap, District Judge of the 34th Judicial District Court, Division “C,” Parish of St. Bernard, State of Louisiana, be suspended for 30-days without pay and ordered to pay the cost of these proceedings. After a thorough review of the facts and law in this matter, we find clear and convincing evidence sufficient to support the charges filed against Judge Wayne G. Cresap and conclude the Judiciary Commission’s recommendation of discipline should be accepted.
The parties stipulated to the underlying uncontested facts necessary to determine whether there was a violation of the Code of Judicial Conduct and the Louisiana Constitution. We summarize those pertinent facts.
FACTS AND PROCEDURAL HISTORY
Judge Cresap assumed his judicial office in December 1999, and he has served continuously since that time. Although the facts involving this disciplinary case center on a three-day hearing on a motion to recuse a district judge, the precipitating event that caused the charges to be filed, some additional background facts are needed to understand the context in which this matter arose.
In May 1996, oyster fishermen holding oyster leases in the Breton Sound and Lake Borgne areas sued the State of Louisiana and the Department of Natural Resources for damages to the oyster leases allegedly caused by the Caernarvon freshwater diversion structure and the Violet siphon. Alonzo v. State of Louisiana, No. 79-080 on the docket of the 34th Judicial District Court for the Parish of St. Bernard, Division “B.” By judgment rendered January 11, 2002, Judge Manuel Fernandez granted plaintiffs’ motion for partial summary judgment and awarded $291.8 million in damages against the State, based upon the judgment in the Avenal class action in Plaquemines Par *626 ish.[1] On January 22, 2002, Judge Fernandez then commenced a bench trial of the remaining claims of the “first flight” of plaintiffs.
On January 24, 2002, the State, through its lead counsel, New Orleans attorney Andrew Wilson, filed a motion to recuse Judge Fernandez. In support of the motion, the State asserted it had only recently learned that in 1989, Judge Fernandez, then an attorney acting as the Chairman of the Louisiana Coastal Restoration Policy Committee, had recommended that hold harmless and indemnification provisions in favor of the State be included in all oyster leases on state water bottoms. In light of this fact, the State asserted that Judge Fernandez provided legal advice to the State concerning the hold harmless clauses and that it intended to call Judge Fernandez as a witness at trial. Following a hearing on the State’s motion to recuse Judge Fernandez, Judge Robert Buckley denied the motion, reasoning that it was untimely because a partial summary judgment had already been rendered in the case. On February 1, 2002, the court of appeal denied the State’s application for supervisory writs on the recusal issue.[2] Thereafter, Judge Fernandez resumed the bench trial of [3the “first flight” plaintiffs. On February 21, 2002, Judge Fernandez rendered judgment awarding the plaintiffs $226.5 million.
On March 15, 2002, days before the “second flight” trial was scheduled to begin before Judge Fernandez, the State filed a second motion to recuse Judge Fernandez. In support of the second recusal motion, the State argued that Judge Fernandez had failed to disclose his prior attorney/client relationship with one of the plaintiffs in the Alonzo case, to whom Judge Fernandez had awarded some $110 million in the “first flight” trial. The State also reurged its argument that Judge Fernandez should be recused because he had previously given legal advice to the State concerning the hold harmless clauses included in the oyster leases.
In contravention of La.Code Crv. PRoc. ANN. art. 155, which requires that recusal motions be randomly allotted, the second motion to recuse was referred to Judge Cresap, who was then the duty judge.[3] Judge Cresap conducted a hearing on the motion to recuse on March 18, 19, and 20, 2002. Judge Fernandez was present in the courtroom for the entirety of the three-day hearing. During the hearing, Judge Cresap repeatedly demanded that Mr. Wilson tell him who had approved his filing of the recusal motion, and specifically, whether then-Attorney General Richard Ieyoub had authorized the filing of the motion. Mr. Wilson admitted that Mr. Ieyoub had not been “apprized ahead of *627 time of this particular motion,” but refused to answer further questions, citing attorney-client privilege. Mr. Wilson eventually asserted his Fifth Amendment rights. As a result, Judge Cresap held Mr. Wilson in contempt four separate times, and then had him ejected from the courtroom. Judge Cresap also [telephoned Mr. Ieyoub several times regarding the recusal motion and demanded that Mr. Ieyoub return from a business trip to Washington, D.C. to personally testify as to his knowledge of the motion. Following the three-day hearing, Judge Cresap denied the motion to recuse Judge Fernandez.
On March 20, 2002, The Times-Picayune published a newspaper article about Judge Cresap’s actions during the recusal hearing. The article, entitled “Ieyoub ordered to testify on recusal,” stated:
State District Judge Wayne Cresap’s demand that Ieyoub immediately return to Louisiana was just one of many unusual and complicated legal wranglings that occurred on the hearing’s second day. The long afternoon included Cresap temporarily booting lead state attorney Andrew Wilson out of the courtroom after Wilson was found in contempt four times and pleaded the Fifth Amendment to protect himself from self-incrimination, rather than disclose who authorized the recusal motion.
* ⅜ *
Cresap repeatedly found Wilson in contempt of court for not being forthcoming with the names, and after Wilson pleaded the Fifth when he was asked who in his firm was involved in the decision, Cresap threw him out of the courtroom for about 25 minutes.
On April 8, 2002, the Office of Special Counsel (OSC) asked Judge Cresap to respond to the allegations in the newspaper article. By letter dated April 18, 2002, Judge Cresap explained that all of his actions during the recusal hearing “were designed to insure that the matter was handled promptly, efficiently, and fairly, and to maintain proper order and decorum in a patient, dignified and courteous manner.” Judge Cresap further denied that he engaged in impermissible ex parte communications with Mr. Ieyoub and denied that he ordered Mr. Ieyoub to appear at the hearing on the motion to recuse.
| ¡After considering Judge Cresap’s response, the Commission, by letter dated June 24, 2002, authorized an investigation and notified Judge Cresap thereof.
DISCIPLINARY PROCEEDINGS:

Formal Charges

On March 23, 2005, the Commission filed three Formal Charges against Judge Cre-sap in Nos. 0242, 0243, and 0244, alleging that Judge Cresap failed to act as a neutral arbiter and abused his authority during proceedings before him, engaged in impermissible ex parte communications, and exhibited improper temperament and demeanor. The Commission alleged Judge Cresap’s conduct violated Code of Judicial Conduct Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2A (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 2B (a judge shall not allow political or other relationships to influence judicial conduct or judgment, nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge), 3A(1) (a judge shall be unswayed by partisan interests, public clamor, or fear of criticism), 3A(2) (a judge shall maintain order and decorum in judicial proceedings), 3A(3) (a judge shall be patient, dignified, and courteous to lawyers and others *628 with whom the judge deals in an official capacity), 3A(4) (a judge shall perform judicial duties without bias or prejudice), and 3A(6) (a judge shall not permit ex parte communications designed to influence his or her judicial action in any case). The Commission further alleged that Judge Cresap engaged in willful misconduct relating to his official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const. Ann. art. V, § 25 C. See infra at 638.
| (¡Stipulated Facts
On January 31, 2006, Judge Cresap and the Office of Special Counsel jointly filed a “Statement of Stipulated Uncontested Material Facts,” as set forth below. Notwithstanding the factual stipulations, Judge Cresap did not agree that he violated the Code of Judicial Conduct or La. Const. Ann. art. V, § 25(C). The parties were also unable to agree upon a recommended penalty.

Stipulated Material Facts Relative to Charge 02Jp2

Judge Cresap failed to act as a neutral arbiter and abused his authority during proceedings held before him on March 18, 19, and 20, 2002, in the case styled Alonzo v. State, Department of Natural Resources, No. 79-080 (La. 34th Judicial District Court, Parish of St. Bernard), as shown by the transcripts and audiotapes of the proceedings before him on those days, including, but not limited to, the specific instances set forth below.
Judge Cresap: (1) made rude, intemperate, and discourteous comments to or about defense counsel and allowed plaintiffs’ counsel to all participate in the argument and conduct of proceedings rather than restricting each side to one counsel to handle the matter; (2) allowed plaintiffs’ counsel to engage in untimely argument and speaking objections without limit, but frequently interrupted, shortened, or curtailed argument or objection by defense counsel; (3) frequently followed the suggestions made by plaintiffs’ counsel for conducting the proceedings, even when the procedures they suggested required him to take things out of their normal order; (4) granted every request for a break or recess made by the plaintiffs’ counsel, but refused to delay the proceedings even momentarily when the request was made by defense counsel, including requiring defense counsel, Andrew Wilson, to go forward with the cross-examination of a witness despite the absence of Mr. Harry Rosenberg, |7who was representing Mr. Wilson on the contempt issue; (5) in at least seven instances, refused to allow defense counsel to proffer evidence or testimony, on at least one occasion stating that he did not want the defense to “taint” the record; (6) decided to hear the plaintiffs’ counsel’s motion for sanctions at the same time the defense counsel’s second motion to recuse was being heard, evidencing the fact that Judge Cresap had already prejudged the merits of the recusal motion before any evidence was received; (7) decided to hear the plaintiffs’ counsel’s motion for sanctions at the same time the defense counsel’s second motion to recuse was being heard, despite the fact the plaintiffs’ motion for sanctions was not filed or served until the morning of the hearing on the recusal motion; (8) ordered defense counsel to have the Attorney General of the State of Louisiana appear in court on the morning of the next day, stating that he would be in contempt of court if he failed to do so, despite the fact the Louisiana Attorney General was then in Washington, D.C. and in spite of the fact the recusal motion had not yet been decided and defense counsel had just been served with the motion for sanctions at the begin *629 ning of the hearing that morning, March 18, 2002; (9) denied having demanded Mr. Ieyoub’s presence at the hearing in his initial response to the Office of Special Counsel yet the audiotapes and transcript of the proceedings show otherwise;[4] (10) ordered defense counsel to obtain the presence in court of several high-ranking state officials on the morning of the next day, in spite of the fact that the recusal motion had not yet been decided and defense counsel had just been served with the motion for sanctions at the beginning of the hearing that morning, March 18, 2002; (11) denied defense counsel’s request that the court reporter be allowed to record the proceedings conducted in his chambers; (12) | ¡¡refused to reopen the defense’s case to allow them to question their witness about an affidavit which Judge Cresap had just stricken from the record, but allowed the reopening of the plaintiffs’ case for the same purpose; (13) considered the plaintiffs’ counsel’s oral motion to compel the defense counsel’s billing records for a subpoena that had just been served on defense counsel earlier that day; and, (14) overruled defense counsel’s objections to questions based upon the premise that the answers to the questions called for attorney/client privileged information, refused to suspend the proceedings until a ruling from the appellate court could be obtained on the issue, and held Mr. Wilson in contempt four times for refusing to answer the same question on four separate occasions despite Mr. Wilson’s assertion of the attorney/client privilege and his Fifth
Amendment right against self-incrimination.

Stipulated Material Facts Relative to Charge 0248

Judge Cresap engaged in impermissible ex parte communications with Attorney General Richard Ieyoub during proceedings held before him on March 18, 19, and 20, 2002, in the case styled Alonzo v. State, Department of Natural Resources, No. 79-080 (La. 34th Judicial District Court, Parish of St. Bernard), as shown more particularly by the following stipulations of fact.
• At the beginning of the hearing on March 18, 2002, or immediately before the hearing, the plaintiffs’ counsel filed and served a motion for sanctions seeking sanctions against defense counsel for filing a second motion to recuse the trial judge, Judge Manuel Fernandez.
• In response to a suggestion by plaintiffs’ counsel, Judge Cresap decided the recusal motion and the motion for sanctions would be heard at the same time rather than seriatim.
• In response to argument by plaintiffs’ counsel that Andrew Wilson, lead defense counsel for the State, filed the motion to recuse without the necessary authority to do so, Judge Cresap announced that he needed to talk to Attorney General Richard Ieyoub to determine whether Mr. Ieyoub had authorized the Iflfiling of the motion so that he would know whom to hold in contempt should the recusal motion prove to be frivolous.[5]
*630 • Judge Cresap announced several times, on the record, that he had spoken to Mr. Ieyoub over the telephone and that Mr. Ieyoub had denied authorizing the motion.
• Judge Cresap called Mr. Ieyoub despite the fact that Mr. Wilson told him, on the record, that Mr. Ieyoub did not specifically authorize the filing of the motion.
• In addition, Judge Cresap allowed Judge Manuel Fernandez, the subject of the recusal motion, to sit in the courtroom throughout the proceedings, despite the fact that the rule for the sequestration of witnesses was invoked at the beginning of the hearing. Moreover, Judge Cresap allowed Judge Fernandez to join him in chambers during breaks in the proceedings, adding to the appearance of impropriety created by his other actions.
• The facts concerning Judge Cresap’s contacts with Mr. Ieyoub were repeated in a newspaper article appearing in The Times-Picayune on March 20, 2002.

Stipulated Material Facts Relative to Charge 0%kh

Judge Cresap exhibited improper temperament and demeanor during proceedings held before him on March 18, 19, and 20, 2002, in the case styled Alonzo v. State, Department of Natural Resources, No. 79-080 (La. 34th Judicial District Court, Parish of St. Bernard).
During that recusal hearing, which spanned three days, the record shows Judge Cresap made the following statements of an intemperate nature:
a. I need to know that [whether Mr. Ieyoub approved the filing of the motion to recuse] before I can make a ruling and to find out whether or not this motion is even valid and authorized by the State of Louisiana on whom you purport to act.
hnb. Do you want to talk about frivolous? You know, this is, what, the third, second or third attempt at a recusal.
c. Apparently, Mr. Diaz, your numbers are better than Mr. Wilson’s numbers [referring to Glenn Diaz’s contact numbers for Mr. Ieyoub].
d. Once again, I think, the State has demonstrated its insensitive attitude toward the system of justice; and the executive branch of the government is trying to supersede the judicial branch by saying this is unproven. This matter has yet to go to trial. So, whether it’s proven or not is yet to be established.
I find myself in a quandary as to who runs the Attorney General’s office, whether it’s Mr. Ieyoub, or whether it’s the governor, or whether it’s Mr. Caldwell [Secretary of the Department of Natural Resources].
e. Now, I want them [everyone listed on letterhead] all here. That way, everybody can examine everybody; and we find out exactly what goes on. Because I can tell you, Mr. Wilson, Mr. Ieyoub cannot, like I said before, cannot stand on both sides of the fence.
f. If you wish to recuse a sitting judge in a district court, it’s only fair that the public, the State of Louisiana, through you, their alleged representative, tell us the facts about what *631 our tax dollars are paying for; who did you speak with and what, you know, at some point what did they tell you to do.
g. Again, I find this highly offensive that our public dollars are being used in this way.
h. Let me tell you something, I am so disheartened that our tax dollars have gone to such pitiful use that I am having a hard time containing myself, Mr. Wilson. You just flaunt your contempt, in front of this court on the taxpayer’s bill. It’s just beyond me that that happens.
However, I am governed by the law. I am going to take my time, and we are going to do what’s necessary to make sure that all of the Ts are crossed and all the Is are dotted, sir. So, let me tell you, if you do that once again in any way, shape, or fashion, you will be escorted out of here in handcuffs.
i. You see what you are telling me now? You see what you are telling me now? I asked you to look before you talked. _J_uNow you are telling me yes, it did go up to the Fourth Circuit; but it may have gone up after the decision. That’s why I asked you to discuss it between you two before you said it in open court. Now, you said it, which was different from what you told me.
j. It’s with a heavy heart that I go forward once again in this matter. I think, this Court has done everything within its power to bring this to an amicable, workable, dignified solution, not only for the attorneys but for the parties involved; particularly, Judge Fernandez and the State of Louisiana.
Once again, I must say it’s very disheartening to watch taxpayer dollars being spent in this fashion. But the parties make their own decisions.
k. Don’t play games with this Court to try to make it look like I have curtailed your cross-examination. When your cross-examination goes outside the bounds of your own motion, of course, I am going [to] curtail your cross-examination. Your attitude and demeanor in this Court is deplorable. It has been deplorable from day one, and it hasn’t gotten any better. It’s a shame that a professional attorney has to come forward and bring with him a counsel to represent him on contempt proceedings and have a baby-sitter with him when he is not acting professionally in the court of law. This witness may step down.
l. Once again, I state on the record it’s a shame that taxpayer money is used for this kind of charade and these kind of antics.
m. I find that Judge Fernandez, the only witness he is to, is a witness to the inappropriate behavior which has been conducted here in this Court during this recusal hearing. He is not a witness to this cause. He is an innocent bystander who has been maligned unmercifully by professional people that it shouldn’t have happened.
n. In this case, gone [sic] have gone beyond the advocacy process and decided to malign and harass the sitting judge. You have decided that this case, by your activities, should not be tried in court on the facts but that you should try the trier of the facts and try to bloody him in this battle.
As a judge of this State, the State of Louisiana, I abhor the way you have used the law and these motions.
*632 |iaIn addition to those statements, Judge Cresap held Mr. Wilson in contempt four separate times for refusing to answer a question calling for the disclosure of attorney-client privileged information. Judge Cresap also ordered Mr. Wilson from his courtroom. Approximately twenty-five minutes passed before he directed the bailiff to escort Mr. Wilson back into the courtroom. Judge Cresap’s actions in holding Mr. Wilson in contempt four separate times and ejecting Mr. Wilson from the courtroom were reported in a newspaper article appearing in The Times-Picayune on March 20, 2002. ,

Prior Closed Files

The stipulation between the parties also addresses two prior complaints involving Judge Cresap.[6] In January 2005, the Commission issued a letter of caution to Judge Cresap in File No. 04-4274, and in June 2005, the Commission issued a letter of admonition to him in File No. 02-3212.
In File No. 04-4274, Judge Cresap conducted an in-chambers interview of the six-year old daughter of the opposing parties in a child custody proceeding, without the parties or their attorneys present and without making a record of the interview. The Commission voted to close the file, finding that Judge Cresap’s actions did not rise to the level of ethical misconduct, but the members cautioned him that the Louisiana jurisprudence does not support the practice in which he engaged.[7]
The Commission opened File No. 02-3212 based upon Judge Cresap’s conduct in Granmo v. Bayham, No. 96-359 on the docket of the 34th Judicial District Court for |13the Parish of St. Bernard. The Commission voted to privately admonish Judge Cresap for engaging in ethically impermissible ex parte communications, in violation of Canon 3A(6) of the Code of Judicial Conduct. The Commission also felt Judge Cresap violated Canon 3A(1) by failing to be faithful to the law and maintaining professional competence in it.

Formal Hearing

On March 31, 2006, the Commission conducted a hearing on the Formal Charges. Judge Cresap, who was not represented by counsel, was the only witness to testify.
At the outset, Judge Cresap pointed out that a newspaper article “began this case,” and that the parties involved in the Alonzo case filed no complaints against him. Judge Cresap then testified that at no time during the three-day recusal hearing did he intentionally violate the Code of Judicial Conduct. Rather, he maintained he was “trying mainly to keep the decorum, order and control of the courtroom in a case that was totally out of control. And I’m regretful for that.”
Judge Cresap testified that his “first error” regarding the recusal hearing was assuming that the motion had been correctly allotted “in civil procedure form.”[8] *633 Judge Cresap’s bailiff also reported to him that everything had already been set up in Judge Fernandez’s courtroom. Instead of relocating the parties, Judge Cresap decided |14that he would use that courtroom, even though it is small. After speaking with the attorneys in chambers, Judge Cresap learned that this was the State’s second recusal motion filed in the case, and that the appellate court had upheld Judge Buckley’s denial of the first recusal motion. Judge Cresap continued:
After hearing this in the chambers conference and looking back at it now, hindsight twenty/twenty, I probably should have just declared res judicata based upon the decision of Judge Buckley and the Fourth Circuit and walk away from it. That’s not my personality. I’m there to do a job and I’m not going to take the easy way out. I tried to give the State their day in court because as plaintiffs were yelling res judicata, the State is saying we have new evidence and we want to put witnesses on and we can prove our case....
I did not know at this time that the case was out of control. And when I say that, I did not realize how belligerent the two sides of attorneys had become prior to my stepping into this. I now know and found out some weeks after this case that the attorneys were quite adamant with one another, belligerent to the point of being almost physical, and that the news media, particularly Karen Turney, the lady who wrote the article that I stand before you because of, was adding fuel to the fire in this matter.
Judge Cresap testified the situation became heated after he went into the courtroom, and he admitted he “let it go on beyond where it should have gone on.” Judge Cresap said he should have recessed the proceeding to let the attorneys “cool off,” or he should have moved the hearing to a larger courtroom “and separated the parties,” but he did neither:
We carried on and the primary bone of contention came when during another recess to try to gain control and speaking with the attorneys, the plaintiff said — told us that Mr. Ieyoub, the Attorney General and chief attorney for the State as I perceived this, was not in favor of nor did he authorize this second recusal hearing. The State’s attorney, Mr. Wilson, did not confirm or deny this, but it was all ambiguous in chambers. In open court, I asked [Mr. Wilson] to contact Mr. Ieyoub and I — in order that I could speak to him as the chief attorney, not in an ex parte manner, because the .plaintiffs’ attorneys were pushing me to call him and find this out.
|1sThey did not want to have this hearing. I asked him to do that. He said he could not. He did not have a number, at which time the plaintiffs chime up, ... “We have a number. We can get him on the phone.”
We get Mr. Ieyoub on the phone. Plaintiffs’ attorneys wanted that. They— they gave me permission to talk to this attorney.... I told Mr. Wilson that if I didn’t talk to [Mr. Ieyoub], I would have to order Mr. Ieyoub into court so we could find out what was going on. We got him on the phone. I spoke with *634 him. He told me he was unaware of the second recusal hearing; he was not in favor of it, but he’d have to get back to me on it, that he was in Washington and attending court business on behalf of the State. I never followed through on the order to bring him back or to have him appear in court because I realized then he was in Washington and he was communicating with me.
Before this and while we were trying to find out what was going on, Mr. Wilson refused to tell me who was his — who was he acting as attorney for, who was his client. And I can now tell you his client was the Department of Natural Resources, as it read in the paper, and that he was a special attorney general ... brought in by the Secretary of the Department of Natural Resources, not technically on the staff of the Attorney General’s Office. So he did his own thing and answered directly to the Secretary of the Department of Natural Resources.
Trying to control the courtroom, every time I asked him who he represented, he wouldn’t tell me. I told him he was in contempt, trying to get cooperation, never intending to be malicious, not intending to rule one side of the case or the other, but mainly to keep the decorum which was terrible in the courtroom. And I realize now that Mr. Wilson was fighting for his life. I did not — I had never met Mr. Wilson before. This was not his personality. The man was out there fighting for his life. But fighting for his life, he was being discourteous to the court in my perception....
I later found out also that there were barbs being passed at the table while I was on the bench and the newspaper reporter was firing it up. There were even some barbs of physical confrontation .... The courtroom was full of oys-termen.... They are rowdy. These are working class men that thought they were being deprived of something and they were rowdy.... It was nasty out there.... At any rate, now I know why Mr. Wilson’s demeanor was the way 11fiit was. I did not know that that day. Had I known that, we would have recessed.
In response to the questions of a Commission member, Judge,Cresap could not explain why it mattered who Mr. Wilson’s client was or who authorized him to file the motion to recuse; Judge Cresap said “it just did [matter] for some reason.”
Judge Cresap testified that sometime after the recusal hearing, he happened upon Mr. Wilson and Mr. Harry Rosenberg in the courthouse, at which time he apologized to both of them. He also expressed his remorse “if I brought disrespect or bad publicity to the judiciary.”
Judge Cresap denied it was his intent to treat Mr. Wilson unfairly during the recu-sal hearing. Nevertheless, he admitted that in retrospect, Mr. Wilson was treated poorly and unfairly. Judge Cresap further admitted he was responsible for the treatment Mr. Wilson received:
... I’m fully responsible. It was my court at the time. I was handling it and I take full responsibility for what I did. That’s why I sit before you. I — I didn’t come with a lawyer or — or to fight the issue. I’m a part of the judiciary and as part of the judiciary I have to work to— to better all of us and to better the image that we sustain. And I come from a parish that sometimes gets maligned for not being fair. And, as such, I do my best to — to dismiss that perception. In this particular case, I think I failed.
RECOMMENDATION OF THE COMMISSION

Conclusions of Fact and Law

In addition to the stipulated facts, the Commission made its own factual findings *635 and legal conclusions, including the following summarizations:
Based upon the stipulated facts and the hearing testimony of Judge Cresap, the Commission found that he violated the Code of Judicial Conduct and La. Const. ANN. art. V, § 25(C) as charged in Formal Charge 0242. It found Judge Cresap exhibited an unethical bias in favor of plaintiffs’ counsel and a prejudice against livdefense counsel during the recusal hearing when he (1) made rude and intemperate remarks to and about defense counsel while making no such comments to or about plaintiffs’ counsel, and (2) allowed plaintiffs’ counsel much leeway and discretion in the court proceedings that were not similarly accorded defense counsel. The Commission acknowledged that a judge has wide discretion in his or her rulings in the course of judicial proceedings, but found Judge Cresap’s actions favoring the plaintiffs were so pronounced that they exceeded what would be within even the upper limits of a judge’s discretion.
Specifically, the Commission found Judge Cresap violated Canon 1 and 2A by failure to remain neutral, essentially aligning himself with the plaintiffs, as demonstrated by the many favorable judicial actions he took on behalf of the oyster fishermen and their attorneys. The manner in which Judge Cresap presided over the three-day recusal proceedings did not evidence high standards of conduct and did not promote public confidence in the impartiality of the judiciary. Further, it is basic that an attorney has the right to proffer evidence, excluded by a trial judge, for consideration by an appellate court. As the Commission found, Judge Cresap’s denial of defense counsel request to proffer evidence reflects his failure to have presided as a neutral decision maker. The Commission further did not accept the judge’s explanation that he denied the proffer because he thought defense counsel was attempting to introduce evidence about the merits of the case through the “back door.”
Under this initial charge, the Commission also found Judge Cresap violated Canon 2B, which says that a judge shall not convey the impression that others are in a position to influence the judge, by the manner in which he allowed the plaintiffs’ attorneys, principally Glenn Diaz, to persuade and “egg him on” as to who had | ^authorized Mr. Wilson to file the motion to recuse, and all of the events that occurred with regard to Attorney General Richard Ieyoub. Judge Cresap testified before the Commission that he called Mr. Ieyoub because the plaintiffs’ counsel were “pushing me to call him ...” There was no justification for Judge Cresap to insist on knowing who authorized the defense counsel to act. At the hearing, Judge Cresap could not give an acceptable reason for doing so. A careful review of the transcript of the recusal hearing demonstrates that Mr. Diaz and another attorney for the plaintiffs pushed the issue, and Judge Cre-sap responded to their influence. The transcript and the evidence taken as a whole reflect that Judge Cresap was overcome by the pressure and aggressiveness of the plaintiffs’ attorneys, and he inappropriately allowed them to influence his judicial decision making.
Judge Cresap described the oyster fisherman plaintiffs as rowdy and difficult. The evidence as a whole, and in particular Judge Cresap’s testimony as to how these plaintiffs behaved at the proceedings, demonstrates that Judge Cresap was swayed by public clamor, in violation of Canon 3A(1). This was apparently an important lawsuit for many residents of St. Bernard Parish, and Judge Cresap testified that the issue of whether or not the State could get a fair trial in St. Bernard Parish was spe- *636 cifícally raised by Mr. Wilson. Judge Cre-sap responded to questioning that he thought he was being fair by hearing the recusal evidence in the first place, noting that a prior attempt to recuse Judge Fernandez had been unsuccessful. The Commission believes a judge other than Judge Fernandez was duty-bound to hear the evidence, so long as the motion alleged a new ground for recusal, which it apparently did. See La.Code Civ. PROC. Ann. art. 151. As the random allotment rules were not followed, it is not clear that Judge Cresap would have been the judge to whom the matter was randomly allotted, but nonetheless he actually presided over recusal proceedings. By |1flcomporting himself in a neutral manner, affording to the defense the same courtesies and advantages as those given to the plaintiffs, Judge Cresap had an opportunity to disabuse Mr. Wilson and his client, the Louisiana Department of Natural Resources, of the idea that the deck was stacked against them in St. Bernard Parish. However, a review of the record reveals that Judge Cresap’s conduct demonstrated that he was affected by the demands of the local plaintiffs — he was swayed by public clamor and fear of criticism.
Judge Cresap’s telling Mr. Wilson four times that he was in contempt for not revealing who had instructed him to file the recusal motion and the judge’s hearing the plaintiffs’ counsel’s motion for sanctions at the same time as the defense counsel’s second motion to recuse, among many other actions, demonstrate that Judge Cresap violated Canon 3A(4)’s prohibition against performing judicial duties with bias or prejudice.
Judge Cresap’s actions, which were detailed in newspaper reports, brought the judiciary into disrepute, in violation of La. Const. Ann. art. V, § 25(C).
In Formal Charge 0243, the Commission found Judge Cresap violated Canon 3A(6) when he engaged in ethically impermissible ex parte communications during the recusal hearing. Judge Cresap acknowledged to the Commission at the hearing that even though he did not stipulate to his violation of Canon 3A(6), he probably did, in fact, engage in wrongful ex parte communications. The judge recognized that even though the plaintiffs urged him to directly contact Attorney General Richard leyoub, which Judge Cresap admittedly did by telephone on several occasions, the defense counsel did not agree to such a direct contact made outside of his presence. The communications to and from Mr. leyoub concerned the merits of the recusal matter, | annot just a scheduling or ministerial aspect of the proceeding. As a result, the conduct was an unethical communication initiated by Judge Cresap.
Formal Charge 0243 further addresses the manner in which Judge Cresap allowed Judge Fernandez, the object of the recusal motion, to remain visible during the proceedings to recuse him. This occurred when (1) Judge Cresap used Judge Fernandez’s courtroom to conduct the hearing; (2) Judge Cresap allowed Judge Fernandez to come in and out of the courtroom and sit in the jury box to listen to the evidence being given; and (3) Judge Cre-sap went into Judge Fernandez’s chambers with him during breaks. Further, Judge Cresap made remarks from the bench that Judge Fernandez was being harassed and maligned by the recusal proceedings. These actions were in violation of Canons 1 and 2A. Judge Cresap tried to justify his use of Judge Fernandez’s courtroom to the Commission: first, he told the Commission he did not perceive the use of Judge Fernandez’s courtroom would pose any problem; and second, he chose to use Judge Fernandez’s courtroom for the convenience of the attorneys. He further told *637 the Commission he did not discuss the case with Judge Fernandez during recesses when they were both alone in Judge Fernandez’s chambers. Regardless of what was said or not said when the two judges were together outside the courtroom, the appearance of impropriety undoubtedly pervaded the proceedings.
Notably, Judge Cresap’s contacts with Mr. Ieyoub were part of newspaper reports about the case, which became prejudicial to the administration of justice and brought the judiciary into disrepute in violation of La. Const. Ann. art. V, § 25(C).
Finally, the Commission commented upon Formal Charge 0244 that alleges Judge Cresap exhibited improper temperament and demeanor during the recusation proceedings before him on March 18, 19, and 20, 2002. Among other things, Judge 121 Cresap held defense counsel in contempt of court on four separate occasions for refusing to answer questions that, the attorney contended, violated attorney-client privilege and his Fifth Amendment right against self-incrimination. In addition to the contempt findings, Judge Cresap had defense counsel removed from the courtroom for approximately 25 minutes. Defense counsel requested an immediate appellate review of the rulings, which Judge Cresap denied. In carrying out these rulings, Judge Cresap spoke in a disparaging and rude manner to Mr. Wilson.
Notably, Judge Cresap stipulated that he “exhibited improper temperament and demeanor during proceedings held before him” in the Alonzo case. This admission of fact is tantamount to an admission of a violation of Canon SA(3), which provides in relevant part, “A judge shall be patient, dignified, and courteous to litigants, ... lawyers, and others with whom the judge deals in an official capacity.” The “statements of an intemperate nature” set forth above further demonstrate Judge Cresap’s violation of Canon 3A(3).
Formal Charge 0244 further implicates Canon -3A(2), which provides that “[a] judge shall maintain order and decorum in judicial proceedings.” Judge Cresap’s testimony to the effect that he had no control over the proceedings, and the manner in which he, with hindsight, would have handled matters differently, reflect clearly and convincingly that Judge Cresap violated Canon 3A(2). His courtroom was out of control, and matters continued to escalate as he failed to contain the problems. The recusal hearing spanned a three-day period, but even with overnight breaks, Judge Cresap told a Commissioner he was not able to step back to reflect and find a way to rein in the improper behavior of the attorneys before him.
In addition to these findings, we note some Commissioners found that the aggregate effect of Judge Cresap’s testimony before the Commission could be | ^construed as a negation of his agreement to the stipulated facts. Judge Cresap responded to questions about the stipulations that he stood by them and understood them, although he argued he did not violate the applicable ethics rules.
Judge Cresap emphasized he was before the Commission due to a newspaper article and a reporter who stirred up the controversy. One Commissioner tried to show Judge Cresap that considering his power as a judge, an attorney who would be appearing before him in the future would probably not take a chance on alienating the judge by lodging a complaint against him. When questioned repeatedly at the hearing, Judge Cresap took responsibility for handling things badly, but he was never able to make the transition to acknowledging his admitted acts were violative of the Code and the Constitution.
Concerning the prior closed files against Judge Cresap, the Commission concluded *638 those complaints, together with the proven facts in this case, suggest a pattern by-Judge Cresap of acting outside his authority, and of engaging in improper ex parte communications.

Recommendation of Discipline

The Commission recognized that as a constitutional fact-finding body, it is not a court, and is not called upon or empowered by law to render legal judgments. With such caveat in mind, the Commission found the record demonstrates the Formal Charges were proven by clear and convincing evidence and that Judge Cresap’s actions were in violation of the Code of Judicial Conduct and the Louisiana Constitution. In the stipulations submitted, Judge Cresap suggested to the Commission that a private written admonishment and/or a Deferred Recommendation of Discipline Agreement be the discipline imposed by the Court. The Office of Special Counsel recommended Judge Cresap be publicly censured. The Commission | ^considered the stipulated facts and exhibits, Judge Cresap’s testimony at the hearing before the Commission, and the guiding decisions of this court.[9] In so doing, the Commission concluded Judge Cresap’s actions were so public and his actions toward Mr. Wilson so egregious that public discipline more severe than a public censure is warranted. Accordingly, the Commission recommended Judge Cresap be suspended without pay for 30 days, as well as ordered to reimburse and pay to the Commission $324.69 in hard costs.
DISCUSSION
This Court is vested with exclusive original jurisdiction in judicial disciplinary proceedings. La. Const. Ann. art. V, § 25(C). La. Const. Ann. art. V, § 25 sets forth the grounds for disciplinary action, providing in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
In addition to these grounds, this Court has recognized that any violation of the Code of Judicial Conduct, without more, may serve as grounds for removal. In re King, 03-1412 (La.10/21/03), 857 So.2d 432, 445; In re Hunter, 02-1975 (La.8/19/02), 823 So.2d 325, 335.
Before this Court can impose discipline, the charge or charges against a judge must be proved by clear and convincing evidence. In re King, 857 So.2d at 445; In re Hunter, 823 So.2d at 328. This standard requires the level of proof supporting the charge or charges against a judge must be more than a mere preponderance of the | ^evidence, but less than beyond a reasonable doubt. In re Hunter, 823 So.2d at 328. Applying these factors to the instant case, we find clear and convincing proof Judge Cresap acted imper-missibly in multiple instances during the course of this three-day hearing. Specifically, we find clear and convincing proof *639 Judge Cresap violated Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3), 3A(4), and 3A(6) of the Code of Judicial Conduct.
SANCTIONS
Before we consider the appropriate sanction in the present case, we are reminded that the primary purpose of the Code of Judicial Conduct is the protection of the public rather than simply to discipline judges. In re Harris, 98-0570 (La.7/8/98), 713 So.2d 1138; In re Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019. In In re Chaisson, 549 So.2d 259 (La.1989), this Court, citing Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been pri- or complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In recommending discipline, the Commission, relying on our decision in In re Chaisson, applied the factors identified therein to the facts of the present case, and concluded respectively: (a) and (b) Judge Cresap’s behavior in the Alonzo matter evidences a pattern of misconduct. The hearing continued over a period of three days | g5and Judge Cresap’s inappropriate behavior was unchanged throughout; (c) and (d) Judge Cresap’s behavior was exhibited in the courtroom as he presided over a much publicized motion to recuse; (e) Judge Cresap entered into an extensive stipulation of facts and evidence regarding his actions and conduct, however, despite many admissions of wrongful conduct to the Commission, he persisted in his argument that he never intended to violate any ethical precept; (f) Judge Cre-sap testified that, if ever given a similar circumstance, he would do things differently. Judge Cresap cited to numerous changes in his procedures he wished he had implemented during the Alonzo hearing and would make in the future if he were faced with similar circumstances; (g) Judge Cresap first took the bench in December 1999. This matter arose in March 2002, and so while he was not a seasoned judge, he was no longer a novice; (h) there have been two prior complaints regarding Judge Cresap, one of which was closed with a letter of caution, the other of which was closed with a letter of admonition; (i) Judge Cresap’s misconduct adversely affected the integrity and the respect of the judiciary. His prejudice toward defense counsel and bias in favor of plaintiffs’ counsel brought the impartiality of the judiciary into question. Additionally, the adverse media attention generated by the proven misconduct exposed the judiciary in a negative manner to the populous at large; and, (j) Judge Cresap may not have intentionally exploited his position to satisfy personal desires. However, the recusal proceeding was an extremely public and potentially volatile hearing. There was a distinct air of “us against them” accompanied by what one Commissioner characterized as “political grandstanding.” This was evidenced by many acts by Judge Cresap or by the actions of others, with *640 Judge Cresap’s tacit or explicit approval. Judge Cresap presided over the recusal motion, assuming but not confirming that the matter had been randomly allotted as was required, which it was |Mnot. Judge Cresap held the hearing to recuse in Judge Fernandez’s courtroom, allowed Judge Fernandez access to the courtroom, used Judge Fernandez’s chambers, and allowed Judge Fernandez in chambers during breaks. Judge Cresap spoke of defense counsel’s abuse of taxpayers’ money in open court, which was filled with oyster fishermen, residents of St. Bernard Parish and plaintiffs in the pending matter. Judge Cresap also spoke highly of Judge Fernandez during the recusal hearing and allowed plaintiffs’ counsel to portray the motion to recuse as slanderous, libelous, vile, nasty and unprofessional. These actions, together with Judge Cresap’s apparent bias toward plaintiffs in this matter, indicate an attempt by Judge Cresap to enhance his political position in his district.
Considering the posture of this case, we find additional comments are in order. Judge Cresap has admitted the underlying facts and does not dispute them. While Judge Cresap emphatically testified he had no intention of violating the Code, the jurisprudence is well established that violations of the Code alone, even without conscious intent by the judge, still support the imposition of discipline by this Court. See In re Elloie, 05-1499 (La.1/19/06), 921 So.2d 882; In re Hunter, 02-1975 (La.8/19/02), 823 So.2d 325.
Furthermore, although Judge Cresap stipulated to the underlying facts, we find it significant he consistently denied throughout these proceedings antecedent to his appearance in this Court that those facts constituted a violation of either the Louisiana Constitution or the Code of Judicial Conduct. Not until Judge Cresap filed his brief in this Court on August 30, 2006, did he state that “[he] takes full responsibility for all of his actions during the hearing and states that he did not act with any malicious intent.” In In re Clark, 03-2920 (La.2/20/04), 866 So.2d 782, there were no uncontested facts; however, the respondent judge refused to stipulate | j>7that his actions rose to the level of violations of the Canons. Considering those circumstances, this Court agreed with the Commission that the respondent judge had not fully accepted his responsibility for the problems caused by his judicial actions. Considering Judge Cresap’s position prior to his hearing before this Court, we find the facts of Clark are strikingly similar to the instant case in this one regard and observe Judge Cresap did not accept full and complete responsibility in this matter until the eleventh hour.
Considering all these facts the Commission fully explored and adopting the conclusions it drew, we accept the recommendation of the Commission and suspend Judge Cresap for a period of 30-days without pay, as well as order him to pay the costs of these proceedings.
DECREE
For the reasons assigned, it is ordered that Judge Wayne G. Cresap be suspended for 30 days without pay for violating Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3), 3A(4), and 3A(6) of the Code of Judicial Conduct. It is further ordered that Judge Wayne G. Cresap reimburse the Judiciary Commission of Louisiana $570.60.
WEIMER, J., concurs in part and dissents in part and assigns reasons.

. Avenal v. State of Louisiana, No. 38-266 on the docket of the 25th Judicial District Court for the Parish of Plaquemines.

. Alonzo v. State of Louisiana, 02-0198 (La. App. 4 Cir. 2/1/02). The court of appeal stated:
On the showing made, relator, State of Louisiana, Department of Natural Resources, has failed to demonstrate how the memo of 17 March 1989 (containing the hold harmless and indemnity language) signed by Manuel Fernandez provides grounds for the recusal of the trial judge. Accordingly, we deny the application for supervisory writ and recall our stay of the proceedings.

. La.Code Civ. Proc. Ann. art. 155(B) is applicable to the 34th Judicial District Court and other district courts which have more than two judges. That subsection provides:
In a district court having more than two judges, the motion to recuse shall be referred to another judge of the district court for trial through the random process of assignment in accordance with the provisions of Code of Civil Procedure Article 253.1.

. By way of explanation, Judge Cresap further explains that he did not fully express in his letter to the OSC what he meant to convey. Judge Cresap further states that it was his intention to advise the Commission that he subsequently decided, off-the-record, not to issue a subpoena to Mr. Ieyoub based upon his telephone conversations with Mr. Ieyoub.

. As background information, we note La.Rev. Stat. Ann. § 49:257 provides that "the attorney general shall represent the state and all departments and agencies of state government in all litigation arising out of or involving tort or contract.” Subsection D of that statute allows "any department of state government” to employ "a general counsel and such other attorneys as may be necessary to *630 provide legal consultation, representation, and such other legal services as are not provided for under such provisions of law.”

. See Supreme Court Rule XXIII, § 3(d), which provides that "Closed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings.”

. In Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5 Cir.), writ denied, 464 So.2d 301 (La. 1985), the court specifically held that it was impermissible for a judge to interview a minor child in chambers unless the child’s parents or the parties' attorneys were present and the meeting was conducted on the record. See also State in the Interest of G.J.L. and M.M.L, 00-3278 at p. 10, n. 4 (La.6/29/01), 791 So.2d 80, 87, in which this Court cited with approval to the Watermeier holding.

. During the recusal hearing, Mr. Wilson attempted to point out that the motion had not been randomly allotted pursuant to the Code of Civil Procedure; however, Judge Cresap refused to consider Mr. Wilson’s objection:
*633 Mr. Wilson, yesterday, when I walked into the courtroom was your time to bring up anything that should have been brought up relative to my appointment. I certainly did not go out and seek this case or this recu-sal. As duty judge, I take what befalls me. I was the duty judge yesterday, today, and throughout the month of March. As such, I will execute my duty to the best of my ability. If that means having this recusal hearing, that’s what I will do. So, the recusal hearing will go forward.
R. p. 439.

. Among other cases, the Commission cited In re Bowers, 98-1735 (La.12/1/98), 721 So.2d 875, and In re: Whitaker, 463 So.2d 1291 (La.1985) (abusive behavior by a judge); In re Fuselier, 02-1661 (La. 1/28/03), 837 So.2d 1257 (failing to act as a neutral arbiter and engaging in ex parte communications); and In re Jefferson, 99-1313 (La.1/19/00), 753 So.2d 181 (abuse of the judge's contempt authority).