# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #013

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **17th day of March, 2015**, are as follows:

**BY JOHNSON, C.J.**:

2014-O -2515      IN RE: JUDGE SHEVA M. SIMS SHREVEPORT CITY COURT CADDO PARISH STATE OF LOUISIANA (Judiciary Commission)

For the reasons assigned, it is ordered that Judge Sheva M. Sims be suspended for 30 days without pay for violating Canons 1, 2A, 3A(1), 3A(2), 3A(3), 3A(4), 3A(7) of the Code of Judicial Conduct, and La. Const. art.V,§ 25(C). It is further ordered that Judge Sheva M. Sims reimburse the Judiciary Commission of Louisiana costs totaling $ 4,691.95.
KNOLL, J., dissents for the reasons assigned by Justice Guidry.
WEIMER, J., concurs and assigns reasons.
GUIDRY, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-O-2515

IN RE: JUDGE SHEVA M. SIMS
SHREVEPORT CITY COURT, CADDO PARISH
STATE OF LOUISIANA

JUDICIARY COMMISSION OF LOUISIANA

**JOHNSON, Chief Justice**

This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana ("Commission") that Judge Sheva M. Sims ("Judge Sims") of the Shreveport City Court, Caddo Parish, State of Louisiana, be suspended without pay for 90 days and ordered to reimburse the Commission's costs. After reviewing the record and applicable law, we find that the charge against Judge Sims is supported by clear and convincing evidence. However, we reject the recommended discipline and instead order Judge Sims be suspended without pay for a period of 30 days. We further order Judge Sims to reimburse the Commission's costs incurred relative to its investigation and prosecution of this case.

**FACTS AND PROCEDURAL HISTORY**

Judge Sims was elected on November 19, 2011, and assumed office in mid-December 2011. The charge arises from an incident that occurred between Judge Sims and an assistant city prosecutor, Katherine Gilmer, on April 24, 2012, wherein Judge Sims stated that Ms. Gilmer was "held in contempt" of court and then ordered the dismissal of fifteen criminal cases on the docket that day. The specific facts of this case are detailed below.

In 2012, Katherine Gilmer was an assistant city prosecutor for the Shreveport City Attorney's Office. Judge Sims and Ms. Gilmer had been opponents in several

1

cases prior to the time that Judge Sims took the bench in December 2011. Sometime prior to April 24, 2012, Ms. Gilmer appeared before Judge Sims to handle driver's license forfeitures for defendants in Shreveport City Court. Ms. Gilmer disagreed with the way Judge Sims handled the license forfeitures and made her disagreement known to Judge Sims and others in the City Prosecutor's Office. In addition to the disagreement over the license forfeitures, Judge Sims felt that Ms. Gilmer was rude and disrespectful of her judicial authority. According to Judge Sims, Ms. Gilmer flailed her arms and rolled her eyes in response to decisions by Judge Sims. Judge Sims characterized the movements as "a big act," and stated that Ms. Gilmer "even looked at a couple of the police officers … [and] she rolled her eyes and turned her head toward them."

Prior to April 24, 2012, Terri Anderson-Scott, the City Attorney for the City of Shreveport and Ms. Gilmer's supervisor, met in person with Judge Sims to discuss some general administrative matters and problems Judge Sims was having with some of the assistant city prosecutors. This meeting did not concern Ms. Gilmer's actions directly. Ms. Scott testified she requested Judge Sims contact her directly regarding any future administrative issues involving the prosecutors. Ms. Scott testified that following the meeting she spoke to all of the prosecutors about respect for all judges and she instructed the assistant prosecutors in her office to contact her in the event that any of the Shreveport City Court judges requested a meeting to discuss administrative matters. Judge Sims testified that her recollection of the meeting was that Ms. Scott was going to speak with the assistant prosecutors about the issues, but Ms. Scott did not request that Judge Sims direct all administrative matters to her at that time.

On April 18, 2012, Marilyn Smith, the Judicial Administrator for the Shreveport City Court, sent an e-mail to Ms. Gilmer requesting a meeting on behalf

2

of Judge Sims. Judge Sims testified that she asked Ms. Smith to arrange the meeting because Ms. Gilmer failed to respond to Judge Sims' secretary's previous attempts to arrange the meeting, the purpose of which was to discuss with Ms. Gilmer how courtroom proceedings were to be handled in her section of court. Judge Sims testified that she had previously met with other prosecutors about such matters. On the same day, Ms. Gilmer replied to Ms. Smith's e-mail with an inquiry about the nature of the meeting, and she copied Ms. Scott and Terrell Myles, the Chief City prosecutor. Ms. Smith responded that she did not know the purpose of the meeting. Ms. Scott advised Ms. Gilmer by email that she would call Judge Sims first "to see what is going on."

Ms. Scott testified she called Judge Sims, but she did not receive an answer and left a message on Judge Sims' voice mail. Ms. Scott did not receive a response to her voice mail and followed up with an e-mail to Judge Sims, but she did not receive a response to her e-mail. Judge Sims denied receiving the voice mail or email message. While the record contains evidence of the email chain between Ms. Gilmer, Ms. Smith and Ms. Scott, there is no evidence in the record of this email sent to Judge Sims other than Ms. Scott's testimony.

Ms. Gilmore testified she emailed Ms. Scott again on April 23, 2012, because she had not heard anything more about the meeting with Judge Sims. There is no email response from Ms. Scott in the record, and it is undisputed that between April 18 and April 24, 2012, Ms. Scott did not speak with Judge Sims.

On April 24, 2012, Ms. Gilmer appeared in Judge Sims' courtroom to handle a jail clearance and criminal arraignment docket. Judge Sims sent a deputy to the courtroom to tell Ms. Gilmer that she wanted to meet with her first in chambers. In response to the deputy relaying Judge Sims' request for a meeting, Ms. Gilmer called Ms. Scott. Ms. Scott told Ms. Gilmer to "stand down" and allow her to speak to Judge

3

Sims first to understand what was going on.

After waiting approximately twenty minutes for Ms. Gilmer to meet with her in chambers, Judge Sims proceeded to the courtroom. She opened the courtroom door to the adjacent hallway and asked Ms. Gilmer to come to the hallway to speak with her. Ms. Gilmer eventually walked to the hallway and Judge Sims asked to meet with her in chambers. Ms. Gilmer testified that she either told Judge Sims "I'm sorry, ma'am, I can't do that," or "with all due respect, I can't do that." Ms. Gilmer then told Judge Sims "I need for you to call Terri Scott, I can't go to your office for a meeting. If you have to hold me in contempt, that's what you have to do." Judge Sims testified she was unaware of the directive from Ms. Scott and that she believed Ms. Gilmer was "ignoring her request" to meet with her to discuss courtroom procedures and decorum.

Judge Sims then walked past Ms. Gilmer into the courtroom to the bench. The transcript reflects that Judge Sims stated, "Madam prosecutor, I need you to come upstairs now to my office." Ms. Gilmer responded, "I apologize, ma'am. I am not permitted to do that." Judge Sims then stated to Ms. Gilmer, "You're held in contempt at this time. All cases are dismissed." According to Judge Sims, she stated as she was walking out of the courtroom that "all cases are dismissed from the docket today, to be rescheduled to a later date." Ms. Gilmer disagreed that Judge Sims stated the cases were to be rescheduled, but did testify that Judge Sims said "everybody is free to go" as she was leaving the courtroom. Neither statement is reflected on the transcript. The Office of Special Counsel attempted to introduce an audiotape of the hearing into evidence, but both the Hearing Officer and Commission sustained Judge Sims' objection to the tape's admission because the tape was not authenticated by the Clerk of Court or custodian of records of the Shreveport City Court, and it was of

4

poor quality and difficult to hear.[1]

The dismissed cases included fifteen criminal cases that were on the docket that day.[2] While the record is not clear on this issue, there was testimony from the City Marshal that he was required to refund the bond of one of the fifteen defendants who so requested. On June 11, 2012, Mr. Myles, the Chief City prosecutor, filed motions to set aside the dismissal and reinstate the charges in the fifteen cases at issue, on the ground that only the city attorney had the power to dismiss the cases. The motions requested a contradictory hearing date be set. On June 15, 2012, Judge Sims signed orders setting the motions for show cause hearings on October 17, 2012. On that date, Judge Sims granted Mr. Myles' motions and reinstated the charges in each of the fifteen cases without the necessity of a hearing.

Following Judge Sims' contempt order, Ms. Gilmer was not arrested, detained, taken into custody, fined, or otherwise escorted from the courtroom. Judge Sims disputes that she actually found Ms. Gilmer in contempt on April 24, 2012. Instead, she contends she issued a summons to Ms. Gilmer through the Judicial Administrator calling for Ms. Gilmer's presence before the court on April 26, 2012, to attend a contempt hearing. Judge Sims did not advise Ms. Gilmer that a contempt hearing would be scheduled.

Ms. Gilmer first learned about the hearing on April 26, 2012, when a subpoena was issued to her requiring her to appear in court that day at 11:30 a.m. Ms. Gilmer was served with the subpoena approximately two hours before the hearing. The subpoena contained the caption "City of Shreveport v. Katherine Gilmer" and stated that the case was "contempt of court." Ms. Gilmer testified she was afraid that Judge

---

[1] There was no court reporter present. Court proceedings are audio recorded and transcribed later if necessary.

[2] The defendants were charged with discharging a firearm, domestic abuse battery (three cases), simple battery, resisting an officer, theft of goods less than $300 (five cases), criminal mischief, public drunkenness (two cases), and solicitation without a permit.

Sims was going to put her in jail, and she met with several colleagues to assess her potential exposure for contempt. Ms. Scott arranged for an attorney to represent Ms. Gilmer.

Immediately prior to the contempt hearing on April 26, 2012, and on the advice of her counsel, Ms. Gilmer met with Judge Sims in her office and apologized. She testified "I told her I understood why she was unhappy with me for not coming to her office. I explained that I had conflicting orders that Terri Scott had told me not to go but that – that I intended no disrespect to her by telling her I couldn't go and that I didn't think we'd have an issue again on it." Ms. Gilmer explained that she did not feel that she could disregard a direct order from her boss.

Once in the courtroom, Ms. Gilmer apologized on the record and in open court:

Ms. Gilmer:  Judge, we've spoken about this, but I think I need to say on the record, I apologize for Tuesday morning. I believe it was a misunderstanding. Essentially I had conflicting instructions. You and I have discussed it. I understand where we stand based on what you wanted me to talk about, and I think on this particular issue, and I apologize. It won't happen again, and I appreciate you taking the time to listen to me on this morning.

Judge Sims:  Thank you for coming to speak to me this morning. I appreciate it. Based upon our conversations earlier, your admissions earlier, and your apology now, the contempt charge is dismissed.

Ms. Scott testified that after the contempt hearing, she sent a letter to all of the Shreveport City Court judges on April 26, 2012, reiterating her request that the judges contact her directly if there was a problem, issue or concern with any of the prosecutors or operations of the office.

Judge Sims' actions were reported by a local televison station on April 24, 2012, and an article reporting the same information appeared in a local Caddo Parish newspaper on May 4, 2012. A Caddo Parish attorney subsequently forwarded a copy of the newspaper article to the Office of Special Counsel.

On September 25, 2013, the Commission filed a Formal Charge against Judge

6

Sims alleging her conduct violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary),[3] 2A (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary),[4] 3A(1) (a judge shall be faithful to the law and maintain professional competence in it), 3A(2) (a judge shall maintain order and decorum in judicial proceedings), 3A(3) (a judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity), 3A(4) (a judge shall perform judicial duties without bias or prejudice), and 3A(7) (a judge shall dispose of all judicial matters promptly, efficiently, and fairly)[5] of the Code of Judicial Conduct. The Commission further

---

[3] CANON 1: A Judge Shall Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.

[4] CANON 2: A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

[5] CANON 3: A Judge Shall Perform the Duties of Office Impartially and Diligently

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

(1) A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.

(2) A judge shall maintain order and decorum in judicial proceedings.

(3) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

(4) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, and shall not permit staff, court officials or others subject to the judge's direction and control to do so. A

alleged that Judge Sims engaged in willful misconduct relating to her official duty and/or engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const. art. V, § 25(C).[6] Finally, the Commission alleged that Judge Sims failed to cooperate in the investigation of this matter through the use of frivolous or unfounded responses or arguments, in violation of Judiciary Commission Rule VII D.

Judge Sims answered the Formal Charge and denied any misconduct. Thereafter, a hearing officer was appointed to conduct proceedings pursuant to Supreme Court Rule XXIII, § 29. Hearing Officer Burrell J. Carter convened a hearing on February 3, 2014, and subsequently filed a report with the Commission containing proposed findings of fact and conclusions of law.

Following the filing of the Hearing Officer's report, the Commission established a briefing schedule and ordered Judge Sims to appear on September 19, 2014, to answer questions from the Commission and to make any statement she

---

judge may make reasonable efforts, consistent with the law and court rules, to facilitate the abilities of all litigants, including self-represented litigants, to be fairly heard, provided, however, that in so doing, a judge should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person.

\*\*\*

(7) A judge shall dispose of all judicial matters promptly, efficiently and fairly.

[6] La. Const. art. V, § 25(C) provides:

On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.

8

desired regarding the Formal Charge and the Hearing Officer's findings and conclusions. The Commission also required Ms. Scott, who had testified at the hearing before the Hearing Officer, to appear before the members for questioning.

On December 2, 2014, the Commission filed its recommendation in this court, finding that the Formal Charge was proven by clear and convincing evidence and recommending that Judge Sims be suspended without pay for 90 days.

## DISCUSSION

This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const. art. V, § 25(C). Therefore, this court has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission.[7]

Pursuant to its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976. This Code is binding on all judges, and violations of its Canons may serve as the basis for the disciplinary action provided for by La. Const. art. 5, § 25(C).[8] The charges against a judge must be proved by clear and convincing evidence before this court can impose discipline.[9] This standard requires that the level of proof supporting the Commission's factual findings must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt.[10]

## Charge

---

[7] *In re King*, 03-1412 (La. 10/21/03), 857 So. 2d 432, 445.

[8] *In re* Jefferson, 99-1313 (La. 1/19/00), 753 So. 2d 181; *In re Bowers*, 98-1735 (La. 12/1/98), 721 So. 2d 875, 879; *In re Marullo*, 96-2222 (La. 4/8/97), 692 So. 2d 1019, 1021; *In re Decuir*, 95-0056 (La. 5/22/95), 654 So. 2d 687, 692.

[9] *In re Hughes*, 03-3408 (La. 4/22/04), 874 So. 2d 746, 760.

[10] *In re Boothe*, 12-1821 (La. 1/29/13), 110 So. 3d 1002, 1018.

The Commission found that Judge Sims committed bad faith legal errors by holding Ms. Gilmer in contempt for conduct that was not contemptuous and for *sua sponte* dismissing the fifteen criminal cases without legal authority to do so. Based on Judge Sims' bad faith legal errors, the Commission found by clear and convincing evidence that Judge Sims failed to personally observe a high standard of conduct so as to preserve the integrity and independence of the judiciary, in violation of Canon 1; failed to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A; and failed to be faithful to the law and maintain professional competence in it, in violation of Canon 3A(1). We agree.

In *In re Quirk*,[11] this court recognized the dangers of subjecting a judge to discipline because of an erroneous legal ruling, in that it "has the potential to trammel the exercise of judicial discretion and stifle the independence of the judiciary."[12] Thus, this court adopted a standard to be applied when addressing whether a judge has committed legal error sufficient to rise to the level of judicial misconduct. We held that "a judge may be found to have violated La. Const. art. V, § 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error."[13] We find Judge Sims violated this standard when she held Ms. Gilmer in contempt.

Contempt of court is defined as "an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the

[11] 97-1143 (La. 12/12/97), 705 So. 2d 172.

[12] *Id*. at 177.

[13] *Id.*

10

court or respect for its authority."[14] Contempts of court can be direct or constructive.[15]

A direct contempt of court is "one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness."[16] The Code of Criminal Procedure provides a non-exclusive list of such acts, including:

> (5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
>
> (6) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
>
> (7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court;
>
> (8) Violation of a rule of the court adopted to maintain order and decorum in the court room;[17]

Constructive contempt of court is defined as "any contempt other than a direct one."[18]

---

[14] La. C. Cr. P. art. 20.

[15] *Id.*

[16] La. C. Cr. P. art. 21.

[17] *Id.* (The other listed acts are clearly not applicable).

[18] La. C. Cr. P. art. 23. The Article also sets forth a non-exclusive list of such acts, none of which are clearly applicable here:

> (1) Willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice;
>
> (2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of court;
>
> (3) Removal or attempted removal of any person or of property in the custody of an officer acting under the authority of a judgment, order, mandate, writ, or process of the court;
>
> (4) Unlawful detention of a witness, the defendant or his attorney, or the district attorney, while going to, remaining at, or returning from the court;

Based on the evidence in the record, it is clear that when Judge Sims' stated Ms. Gilmer was "held in contempt" it was based on behavior Judge Sims perceived to be "contumacious, insolent, or disorderly," a "breach of the peace, boisterous conduct, or violent disturbance tending to interrupt of interfere with the business of the court or to impair its dignity or respect for its authority," or a "violation of a rule of the court adopted to maintain order and decorum in the court," and would thus fall under the category of direct contempt. The procedure for addressing direct contempt is set forth by Code of Criminal Procedure Article 22:

> A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.

Although Judge Sims did not issue an order legally finding Ms. Gilmer *guilty* of direct contempt of court on April 24, 2012, and did not punish Ms. Gilmore for the alleged contempt, it is clear that Judge Sims made a finding on the record that Ms. Gilmer's conduct amounted to direct contempt in accordance with Code of Criminal Procedure Article 21. We find Judge Sims committed a bad faith legal error rising to the level of judicial misconduct in so doing.

Judge Sims committed legal error by failing to follow the proper procedure for addressing a direct contempt. In response to Ms. Gilmer's statement that she was not

---

(5) Improper conversation by a juror or venireman with any person relative to the merits of a case which is being, or may be, tried by a jury of which the juror is a member, or of which the venireman may become a member; or receipt by a juror or venireman of a communication from any person with reference to such a case without making an immediate disclosure to the court of the substance thereof;

(6) Assuming to act as a juror, or as an attorney or other officer of the court, without lawful authority;

(7) Willful disobedience by an inferior court, judge, or other official thereof, of the lawful judgment, order, mandate, writ, or process of an appellate court, rendered in connection with an appeal from a judgment or order of the inferior court, or in connection with a review of such judgment or order under a supervisory writ.

permitted to go to Judge Sims' office, Judge Sims immediately stated "You're held in contempt at this time. All cases dismissed." Ms. Gilmer was not given an opportunity to be heard by way of defense or mitigation on April 24, 2012, as required by Article 22. While Judge Sims notes Ms. Gilmer was given the opportunity to be heard at a hearing on April 26, 2012, there is no provision in the Code of Criminal Procedure which would allow Judge Sims to postpone addressing a direct contempt until a later time. Had Judge Sims followed the proper procedure, the direct contempt charge against Ms. Gilmer could have either been dismissed after she was heard by way of defense, or Judge Sims could have issued an order finding Ms. Gilmer guilty of direct contempt of court, thus allowing Ms. Gilmer to seek appropriate review. By failing to follow the proper procedure for addressing direct contempt, Judge Sims effectively failed to leave any legal remedy for Ms. Gilmer to dispute or seek review of the finding of direct contempt.[19]

We further find this legal error was made in bad faith. Instead of handling the contempt matter pursuant to the procedure set forth in Article 22, Judge Sims acted improperly solely due to her personal frustration with Ms. Gilmer. As found by the Commission, it is evident Judge Sims knew or should have known that Ms. Gilmer was being put in a situation of defying a direct order from her supervisor. Judge Sims' claim that she had no way of knowing of Ms. Scott's directive is not credible. To believe that she had no knowledge would mean that much of Ms. Scott's testimony is false, a notion the Hearing Officer and Commission were unable and unwilling to accept. Further, during their discussion in the hallway, Ms. Gilmer testified that she asked Judge Sims, "[H]ave you talked to Terri Scott?" and told

---

[19] Additionally, Ms. Gilmer's behavior does not fall under any of the acts that could be considered a constructive contempt. And, Judge Sims failed to use the proper procedure to address a charge of constructive contempt as set forth in Code of Criminal Procedure Article 24. The subpoena served on Ms. Gilmer was not timely because it was served merely two hours before the hearing, and it did not include a motion or rule alleging the facts constituting the contempt.

Judge Sims, "I need you to call Terri Scott, I can't go to your office for a meeting[.]" Moreover, when Judge Sims assumed the bench and reiterated her request for a meeting, Ms. Gilmer stated, "I am not *permitted* to do that." (Emphasis added). Logic dictates that if Judge Sims truly had no knowledge of Ms. Scott's directive, Ms. Gilmer's statements would have prompted her to ask clarifying questions.

Judge Sims attempted to explain her actions on April 24, 2012, by claiming Ms. Gilmer's statements to her were disruptive and disrespectful to the court, the Office of the Prosecutor, and to the other litigants who were present in court. However, there is no indication in the record that anyone other than Judge Sims heard any statement by Ms. Gilmer refusing to meet with Judge Sims until Judge Sims assumed the bench and reiterated her request for a meeting in open court. The Commission concluded that Judge Sims decided to assume the bench and force Ms. Gilmer to comply and then punish her when she refused to do so.

Judge Sims is also charged with erroneously dismissing fifteen cases before her on April 24, 2012. We find this action also constituted judicial misconduct under *In re Quirk*. There is no question Judge Sims' dismissal of the cases constituted legal error. Code of Criminal Procedure Article 691 states that only the district attorney has the power to dismiss an indictment. That power also flows to a city attorney.[20] The law is clear, unambiguous, and "there is no confusion or question as to its interpretation."[21]

Further, we agree with the Commission's finding that Judge Sims acted in bad faith in dismissing the cases, meeting the second requirement of *In re Quirk*. We agree with the Commission that Judge Sims' dismissal of these cases was based solely on her personal frustration with Ms. Gilmer and constituted a failure to dispose

---

[20] *See City of Lake Charles v. Anderson*, 182 So. 2d 70 (La. 1966).

[21] *See In re Quirk*, 705 So. 2d at 177.

of those cases in a proper, timely, or efficient manner. Judge Sims' actions disrupted the proceedings scheduled for court that day and prevented the orderly administration of justice. We agree with the Commission's finding that Judge Sims' testimony that she did not intend to dismiss the fifteen criminal cases but, rather, intended that they be rescheduled at a later date was not credible. When a case is to be rescheduled, it would generally be continued, not dismissed. Although Judge Sims was relatively new to the bench at the time, she was an experienced attorney, having practiced law for seventeen years prior to being elected. We find Judge Sims' action constituted more than a poor choice of words. Further, as this court explained in *In re Elloie*, "there is no subjective intent requirement for judicial misconduct. An act does not have to be intentional to support judicial discipline."[22] Additionally, the fact that the cases were eventually reinstated does not negate the finding of misconduct. "[T]he fact that other judges or other circumstances may correct the erroneous or legally unsupportable judicial action does not absolve the respondent judge from the consequences of his wrongful acts."[23]

Thus, we agree with the Commission's findings that Judge Sims failed to personally observe a high standard of conduct so as to preserve the integrity and independence of the judiciary, in violation of Canon 1; failed to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A; failed to remain unswayed by partisan interests, public clamor, or fear of criticism, in violation of Canon 3A(1); failed to maintain order and decorum in judicial proceedings, in violation of Canon 3A(2); failed to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom

---

[22] 05-1499 (La. 1/19/06), 921 So. 2d 882, 902 (citing *In re Hunter*, 02-1875 (La. 8/19/02), 823 So. 2d 325, 336 ("[A] judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.")).

[23] *Elloie*, 921 So. 2d at 902.

the judge deals in an official capacity, in violation of Canon 3A(3); failed to perform judicial duties without bias or prejudice, in violation of Canon 3A(4); and failed to dispose of judicial matters promptly, efficiently, and fairly, in violation of Canon 3A(7).

Because Judge Sims brought her private dispute with Ms. Gilmer into the public courtroom, the local news media published reports about incident. Judge Sims' behavior thus created adverse publicity prejudicial to the administration of justice and caused damage to the perceived independence, integrity, and impartiality of the Shreveport City Court and of the judiciary as a whole. We agree with the Commission's finding that Judge Sims committed willful misconduct relating to her official duty and persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute, in violation of La. Const. art. V, § 25(C).

### Discipline

In deciding on an appropriate discipline in this matter, we look to the factors set forth by this court in *In re Chaisson*.[24] Based on our review of the record, we specifically find:

(a) and (b): We do not find Judge Sims' misconduct evidences a pattern of conduct. Judge Sims had only been on the bench four months and there is no evidence of similar misconduct beyond this isolated incident.

(c) and (d): Judge Sims' misconduct occurred in the courtroom in Judge Sims' official capacity.

(e) and (f): We find Judge Sims' has acknowledged and taken responsibility for her actions and learned from the experience. Judge Sims testified that she has matured and gained more experience since that time, and she would "absolutely"

---

[24] 549 So. 2d 259 (La. 1989).

handle things differently if the situation occurred again.

(g): Judge Sims had been a sitting judge for only four months at the time of the incident, thus she was inexperienced.

(h): Judge Sims has no prior history before the Commission.

(i): Judge Sims' actions have harmed the integrity of and respect for the judiciary. Judge Sims decided to bring a private dispute about an administrative matter into the courtroom and improperly invoked her contempt power. Judge Sims also dismissed fifteen criminal cases without any legal authority or justification, resulting in delayed justice. Judge Sims' conduct was reported negatively in the media causing damage to the perceived independence, integrity, and impartiality of the Shreveport City Court and of the judiciary as a whole.

(j): Judge Sims' actions resulted from her personal feelings towards Ms. Gilmer and her perception that Ms. Gilmer lacked respect for her. But Judge Sims' actions cannot be viewed in a vacuum. We must give some consideration to the context of Judge Sims' actions in light of her adversarial relationship with Ms. Gilmer, and in light of Ms. Gilmer's actions. As a judge, it is certainly understandable that Judge Sims was frustrated regarding Ms. Gilmer's failure to agree to a meeting. And, the record supports Judge Sims' assertions that Ms. Gilmer failed to directly respond to some of her requests for a meeting. While Judge Sims' conduct cannot be condoned, it is not unreasonable that Judge Sims felt ignored and disrespected.

In considering appropriate discipline in this case, we note that while Judge Sims' actions constituted misconduct, no serious harm resulted. Although Judge Sims made a finding of contempt, Ms. Gilmer was not legally found guilty of contempt, not punished in any way and the charges were dismissed. Further, there was only minimal harm caused by Judge Sims' dismissal of the cases. The evidence shows that all of the cases were reinstated, albeit with several months delay. And, the defendants who

planned to plead guilty on April 24, 2012, eventually did.[25]

Finally, we find Judge Sims cooperated with the investigation. The Hearing Officer and the Commission found a lack of cooperation based on her "frivolous or unfounded" statements that the cases on the docket were not dismissed, but rather rescheduled. We find Judge Sims' statements in that regard were part of her explanation of her actions, and consistent with her position that her intent was to continue the cases, not dismiss them. We do not find that asserting a defense, or offering an explanation, amounts to a lack of cooperation.

In light of the above, we find the Commission's recommended discipline of a 90-day suspension too harsh. This Court has consistently held that the "primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline judges."[26] In arguing for a 90-day suspension, the Commission cites *In re Sassone*[27] and *In re Fuselier*[28] as comparable cases. However, in *In re Sassone*, *supra*, the judge's misconduct extended beyond one isolated incident. Judge Sassone was found to have abused her contempt power in two instances, abused her authority by improperly revoking bonds in two instances, and also to have violated the Code of Judicial Conduct by acting in a rude, impatient and sarcastic manner towards an attorney. Further, Judge Sassone was an experienced judge at the time of the misconduct, having served for 12 years. This court suspended Judge Sassone for 60 days.

In *In re Fuselier*, *supra*, the judge was found to have committed numerous violations: (1) engaged in pattern or practice of legal error; (2) violated canons

---

[25] Although it is unclear from the record, it appears that only one bond was required to be reimbursed because of the dismissal.

[26] *In re Benge*, 09-1617 (La. 11/6/09), 24 So. 3d 822, 844.

[27] 07-0651 (La. 6/29/07), 959 So. 2d 859.

[28] 02-1661 (La. 1/28/03), 837 So. 2d 1257.

requiring judges to avoid the appearance of impropriety and to perform duties of office impartially; (3) abused his authority by conducting arraignments in criminal cases when no prosecutor was present; (4) engaged in impermissible ex parte communications; and (5) his institution of worthless check program created appearance of impropriety. At the time of the misconduct, Judge Fuselier had served on the bench for 8 years. He was suspended for 120 days.

Given the more extensive nature of the misconduct in those cases, and given those judges were much more experienced than Judge Sims, we find *In re Cresap*[29] more comparable. In *In re Cresap*, the judge had served on the bench for slightly more than two years at the time the misconduct occurred. Judge Cresap was charged with misconduct relative to his conduct during a recusal hearing wherein he engaged in *ex parte* communications, improperly held defense counsel in contempt of court, exhibited unethical bias in favor of plaintiffs, and exhibited improper temperament and demeanor. Further, the judge's misconduct was reported in the local newspaper. This court imposed a 30-day suspension.

Considering the above, we find a 30-day suspension without pay to be an appropriate discipline.

**DECREE**

For the reasons assigned, it is ordered that Judge Sheva M. Sims be suspended for 30 days without pay for violating Canons 1, 2A, 3A(1), 3A(2), 3A(3), 3A(4), 3A(7) of the Code of Judicial Conduct, and La. Const. art. V, § 25(C). It is further ordered that Judge Sheva M. Sims reimburse the Judiciary Commission of Louisiana costs totaling $ 4,691.95.

---

[29] 06-1242 (La. 10/17/06), 940 So. 2d 624.

19

**SUPREME COURT OF LOUISIANA**

**NO. 2014-O-2515**

**IN RE: JUDGE SHEVA M. SIMS**
**SHREVEPORT CITY COURT, CADDO PARISH**
**STATE OF LOUISIANA**

**JUDICIARY COMMISSION OF LOUISIANA**

**KNOLL, J.,** dissents for the reasons assigned by Justice Guidry.

# SUPREME COURT OF LOUISIANA

## NO. 2014-O-2515

## IN RE: JUDGE SHEVA M. SIMS
## SHREVEPORT CITY COURT, CADDO PARISH
## STATE OF LOUISIANA

*JUDICIARY COMMISSION OF LOUISIANA*

**WEIMER, J.**, concurring.

I concur in the result. I also subscribe to much of the majority's reasoning except as detailed below.

The majority opinion in this case relies on **In re Cresap**, 06-1242 (La. 10/17/06), 940 So.2d 624, explaining that **Cresap** stands as a justification for a lower sanction than the sanction of a 90-day suspension recommended by the Judiciary Commission. I dissented in **Cresap** on the sanction of a 30-day suspension because I found mitigating evidence weighed in favor of a lesser sanction in that case. Even so, I believe a 30-day suspension is appropriate as a sanction in this matter. Unlike **Cresap**, there were numerous findings in this matter by the hearing officer and the Judiciary Commission that the testimony of the judge lacked credibility or was less than candid during the disciplinary process. These findings are consistent with the finding that her defense was "frivolous or unfounded" when the judge attempted to explain what was meant when she announced in open court that more than a dozen criminal cases were dismissed.

In the final analysis, I agree that a 30-day suspension without pay is appropriate here. The finding of a lack of credibility and candor is an obstacle, in my view, to

anything less than a 30-day suspension despite the fact that the judge's limited experience serving as a judge mitigates in her favor.  Thus, I respectfully concur.

## SUPREME COURT OF LOUISIANA

## NO. 2014-O-2515

## IN RE: JUDGE SHEVA M. SIMS
## SHREVEPORT CITY COURT, CADDO PARISH
## STATE OF LOUISIANA

## JUDICIARY COMMISSION OF LOUISIANA

**GUIDRY, J., dissents in part and assigns reasons.**

I dissent in part from the majority's imposition of a suspension of thirty days without pay. Because this was a relatively newly-elected judge faced with a somewhat unusual directive from the City Attorney that assistant city prosecutors could not meet with city court judges to discuss administrative matters except upon notice to the City Attorney, and because the judge has accepted responsibility and learned from her misconduct, I would simply censure the judge pursuant to La. Const. art. V, § 25(C), and order her to reimburse the Judiciary Commission's costs.

1