**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2024 KA 0142

STATE OF LOUISIANA

VERSUS

MONTREY TREVELL PAIGE

**Judgment Rendered: NOV 2 1 2024**

\* \* \* \* \* \*

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 1900176
The Honorable William S. Dykes, Judge Presiding

\* \* \* \* \* \*

Scott M. Perrilloux
District Attorney

Counsel for Appellee
State of Louisiana

Brett Sommer
Assistant District Attorney
Livingston, Louisiana

Katherine M. Franks
Madisonville, Louisiana

Counsel for Defendant/Appellant
Montrey Trevell Paige

\* \* \* \* \* \*

**BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.**

Penzato, J. Concurs with reasons.

Stromberg, J. Concurs for the reasons
assigned by Judge Penzato.

**GUIDRY, C.J.**

The State of Louisiana charged the defendant, Montrey Trevell Paige, by bill of information with possession with intent to distribute a Schedule I controlled dangerous substance (marijuana) with an aggregate weight of less than two and one-half pounds, a violation of La. R.S. 40:966(A) and (B)(2)(a). The defendant initially entered a plea of not guilty. However, pursuant to a plea agreement, he subsequently pled guilty to the instant offense, as well as four additional offenses in companion cases bearing docket numbers 2101766 and 1900133.[1]

Thereafter, the defendant did not appear as scheduled for sentencing, and his counsel filed a motion to withdraw his guilty plea, but the trial court denied the motion. When the defendant finally appeared for sentencing, the trial court sentenced him to ten years imprisonment at hard labor.[2] The defendant now appeals, designating two assignments of error. For the following reasons, we set aside the defendant's conviction and sentence and remand this matter for further proceedings.

## BREACH OF PLEA AGREEMENT

In his first assignment of error, the defendant argues the trial court erred in failing to order specific performance of the plea agreement or, alternatively, in failing to set aside his guilty plea. The defendant contends the State breached the plea agreement by imposing an additional condition after he entered his pleas, rendering his pleas constitutionally infirm.

---

[1] The instant case bears docket number 1900176. Under docket number 2101766, the defendant pled guilty to illegal carrying of weapons while in possession of or during the sale or distribution of a controlled dangerous substance, distribution or possession with intent to distribute heroin, and possession of a firearm by a convicted felon. Under docket number 1900133, the defendant pled guilty to possession with intent to distribute heroin.

[2] The trial court ordered the sentence to be served consecutively to the sentences imposed in the companion cases. Under docket number 2101766, the trial court sentenced the defendant to concurrent sentences of ten years, forty years, and twenty years on the charges therein. Under docket number 1900133, the trial court sentenced the defendant to forty years imprisonment. In total, the defendant was sentenced to serve ninety years imprisonment.

2

In determining the validity of plea bargain agreements, Louisiana courts generally refer to the rules of contract law, while recognizing a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. State v. Givens, 99-3518, p. 14 (La. 1/17/01), 776 So. 2d 443, 455. The four elements of a valid contract are: (1) the parties' capacity to contract; (2) the parties' freely given mutual consent; (3) the existence of a certain, lawful object for the contract; and (4) the existence of a lawful purpose, or cause, of the contract. State v. Rider, 23-0162, p. 3 (La. App. 1st Cir. 11/9/23), 379 So. 3d 40, 42-43; see La. C.C. arts. 1918, 1927, 1966, and 1971. Under substantive criminal law, there are two alternative remedies available for breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. The party demanding performance of a plea bargain agreement has the burden of proving its existence and the terms thereof. Rider, 23-0162 at p. 4, 379 So. 3d at 43.

A valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. Prior to accepting a guilty plea, the trial court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. La. C. Cr. P. art. 556.1. The trial court must also determine whether the defendant has voluntarily and knowingly waived his right against self-incrimination, his right to a jury trial, and his right to confrontation. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); State v. Young, 20-0049, p. 3 (La. App. 1st Cir. 11/6/20), 315 So. 3d 904, 907, writ denied, 20-01402 (La. 2/9/21), 310 So. 3d 177.

The withdrawal of a guilty plea must be predicated on legal cause; that is, on a showing made by the defendant that his plea bargain was constitutionally infirm, creating a legal defect that nullifies the agreement between the parties. Young, 20-

3

0049 at p. 4, 315 So. 3d at 907-08. A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the Boykin colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. A constitutionally infirm guilty plea may be set aside either by means of an appeal or postconviction relief. Young, 20-0049 at pp. 3-4, 315 So. 3d at 907.

On November 16, 2021, the State and the defendant agreed the defendant would enter a guilty plea in exchange for a maximum concurrent sentence of eighteen years.[3] The State further agreed not to file a habitual offender bill of information against the defendant. The trial court then conducted a colloquy with the defendant on the record to determine whether the plea was entered with the defendant's full knowledge of its consequences. See Boykin, 395 U.S. at 242-44, 89 S.Ct. at 1712-13. The trial court advised the defendant of the nature of the charges, the mandatory minimum sentences, and the possible maximum sentences. The defendant stated he understood same. The trial court then advised the defendant of his rights under Boykin, which the defendant waived. The defendant subsequently entered his guilty plea.

The trial court then asked the defendant whether he was threatened or coerced to enter a plea, and the defendant responded, "Basically." Defense counsel spoke with the defendant for a few minutes regarding his answer. When the trial court again asked the defendant if he had been threatened or coerced to enter a plea, the defendant asked what the trial court meant by coerced. The trial court stated that the defendant had just been given an opportunity to discuss what it

---

[3] The State offered a separate, concurrent sentence for the offense in the instant case, as well as for the offenses in the companion cases. In this case, the State offered ten years, to be served concurrently with the sentences imposed in the companion cases. Under docket number 2101766, the State offered a ten-year sentence without benefits and two concurrent eighteen-year sentences, respectively, on the charges therein. Under docket number 1900133, the State offered a concurrent ten-year sentence on the charge therein.

meant with his counsel, to which the defendant responded he did not. The following colloquy then occurred:

[THE STATE]:

Judge, right. I don't think — I think what — he's confused by the fact that I'd be habitual offendering him. And he'd have been looking at a lot more time. And he's thinking that might be coercion. But coercion is: I have threatened you with bodily harm, or life, or taken something away from you   . . .

[THE DEFENDANT]:   Eighty years is life.

[THE STATE]:

Okay. I understand. But that's not a coercion. That's just a fact of law that your Judge – that your attorney and I've explained to you. I mean that's – that's what he would get on a habitual offender.

THE COURT:

The calculation of time is not considered coercion. We have to inform you of what you're looking at because if not, then you wouldn't be fully informed. And that's why we have to inform you of what your exposure could be.

When the trial court asked the defendant a third time whether he felt threatened or coerced to enter the plea, the defendant responded negatively. The defendant then stated he was not promised anything more lenient than the plea deal offered that day. The trial court asked whether the offer was the best one given since the defendant received new charges (referring to the charges in 2101766, not the instant case), at which point the State discussed the following caveat:

[THE STATE]:

That's correct, Judge. But after consulting with the court and with my office, Your Honor, it has to be sentencing on [November 19, 2021].

THE COURT:

Right.

[THE STATE]:

That he understands if he gets in any other criminal conduct, he gets arrested even for a traffic ticket, he — he does not show up, the

State of Louisiana is not going to withdraw, but we have the right to ask for the maximum amount sentence, which is going to be the forty. And the [S]tate will be filing a habitual offender if he doesn't show up Friday for sentencing and remand.

THE COURT:

All right.

[THE STATE]:

But right now, the offer is eighteen total.

THE COURT:

All right.

The trial court asked defense counsel whether he advised the defendant of the nature of the charges and his legal and constitutional rights and whether he believed the defendant understood his advice. Counsel responded affirmatively to each question and stated he did not have any further advice for the defendant. The trial court then asked the defendant whether he had any questions he would like to ask the court, the district attorney, or his attorney, to which the defendant responded he did not. The defendant further stated he was satisfied with his attorney's representation.

The trial court accepted the defendant's guilty pleas, finding them to be voluntary, knowing, and intelligent. The trial court noted the defendant wished to exercise the sentencing delay "based upon the agreed stipulations that we've previously put on the record." The trial court advised the defendant sentencing was set for November 19, 2021, "with the stipulations that the ankle monitor is to remain, that there's no new criminal activity, and you remain at your home[.]" When the trial court asked whether anything else needed to be put on the record, the State responded: "No. He — he understands that he has to be here, no criminal conduct, ankle bracelet on, or I'm able to ask for the forty years and file a habitual offender. So, he just needs to show up, be ready for remand."

Three days later, on November 19, 2021, the defendant failed to appear for sentencing, but he was represented by counsel who filed a written motion to withdraw the defendant's guilty plea, arguing the plea colloquy demonstrated the defendant's pleas were entered unintelligently and unknowingly. Specifically, counsel noted the defendant twice stated he felt threatened or coerced to enter a plea, and he had to consider pleading guilty to the charges he received under docket number 2101766 just three months prior to the date he pled. Thus, defense counsel contended that "because of the immense pressure to reconsider his plea options, defendant did not *recall being advised* of all of his rights enunciated in Boykin[,]" nor did he "*recall being apprised* by the [c]ourt of the possible sentences for the offenses for which he plead [sic] guilty to." (Emphasis added).

When neither the defendant nor his counsel appeared for the hearing on March 15, 2022, the trial court dismissed the motion to withdraw defendant's guilty plea. Counsel later re-urged the motion on February 27, 2023, asserting the same grounds alleged in the written motion; namely, the defendant's plea was not voluntary and knowing because he twice stated during the plea colloquy he felt coerced to plead guilty and was very reluctant to take the plea deal. The trial court again denied the motion and stated the defendant was not coerced; rather, he did not understand the definition of coercion. The trial court found the defendant knowingly and intelligently accepted the plea agreement "and then didn't want to face the time that he was facing then." The defendant noted his objection without reasons. The trial court then imposed the maximum sentence for the instant offense.[4]

---

[4] We note the State did not file a habitual offender bill of information against the defendant in this case; however, it filed one under docket number 1900133. As a result, the trial court adjudicated the defendant a fourth-felony offender in that case only. The sentence herein is not enhanced pursuant to the defendant's habitual offender status.

At the outset, we note a defendant ordinarily may not raise an argument for the first time on appeal. See La. C. Cr. P. art. 841(A). However, the Louisiana Supreme Court has consistently permitted a constitutionally infirm guilty plea to be withdrawn after sentencing by way of appeal or postconviction relief. State v. Dixon, 449 So. 2d 463, 464 (La. 1984). Further, courts have reviewed claims of constitutionally infirm pleas on appeal even in the absence of a motion to withdraw a guilty plea. See State v. West, 97-1638, p. 2 (La. App. 1st Cir. 5/15/98), 713 So. 2d 693, 695; State v. Gamboa, 22-806, pp. 5-6 (La. App. 3d Cir. 9/13/23), 370 So. 3d 1260, 1266, writ denied, 23-01376 (La. 4/9/24), 382 So. 3d 842; and State v. Hebert, 02-884, p. 3 (La. App. 5th Cir. 12/30/02), 838 So. 2d 30, 31-32. As the defendant in this case did file a motion to withdraw his guilty plea, we will address his claim that his plea was constitutionally infirm based on the additional term set by the State.[5] See State v. Casson, 07-1081, p. 2 (La. App. 3d Cir. 2/4/09), 2 So. 3d 1246, 1247-48 (on rehearing), writ denied, 09-0501 (La. 11/20/09), 25 So. 3d 785 (wherein the court vacated its original judgment finding defendant was precluded from asserting a new ground for withdrawal of his guilty plea, acknowledging the issues raised on appeal were "'core constitutional rights of the defendant-they are not "trial errors" that are normally waived by failing to file a contemporaneous objection.'").

On appeal, the defendant relies on Rider in arguing his conviction and sentence should be set aside and the case remanded to allow him an opportunity to withdraw his guilty plea. In Rider, the defendant initially pled not guilty but later pled guilty pursuant to a plea agreement. Rider, 23-0162 at p. 2, 379 So. 3d at 42. During the Boykin examination, defense counsel stated the defendant would enter

---

[5] In State v. West, 18-0868, pp. 5-6 (La. App. 1st Cir. 5/31/19), 277 So. 3d 1213, 1217, the defendant filed a motion to withdraw his guilty plea but asserted different grounds on appeal. Thus, this court found the defendant's claim was not properly before the court but ultimately analyzed the merits, finding the defendant was not entitled to withdraw his plea. We find the cases relied on in West to support the procedural bar to the defendant's claim do not apply to a motion to withdraw a guilty plea.

8

guilty pleas "as per our pretrial discussions." After the plea colloquy, the State advised the defendant it would file a habitual offender bill of information against him if he failed to appear for sentencing and *defense counsel* stated he understood. Rider, 23-0162 at p. 4, 379 So. 3d at 43. When the defendant failed to appear for sentencing, the State filed a habitual offender bill against him. The defendant then moved to withdraw his guilty pleas, which the trial court denied. The trial court adjudicated the defendant a fourth-felony offender and sentenced him to twenty years in prison without benefits. Rider, 23-0162 at pp. 2 and 4, 379 So. 3d at 42-43.

On review, this court set aside the defendant's conviction, habitual offender adjudication, and sentence and remanded the case to the trial court to allow the defendant an opportunity to withdraw his guilty plea. This court found the plea colloquy did not establish the defendant *consented to* or understood the consequences of the additional condition the State attempted to impose after the defendant pled guilty. Further, the defendant signed a written plea agreement, which specifically provided for no additional conditions other than those contained in the plea colloquy. Thus, this court found the State unilaterally changed the terms of the agreement after the defendant entered his guilty plea, thereby rendering the plea invalid. Rider, 23-0162 at pp. 5-6, 379 So. 3d at 44.

We recognize that in Rider, the defendant therein was not informed on the record prior to entering his plea that his failure to appear at sentencing would result in the filing of a habitual offender bill. Rather, the State added the condition at the end of the plea colloquy after the trial court accepted the plea. The defendant also signed a written plea agreement providing that no additional conditions, other than those in the plea colloquy, were to be imposed. Rider, 23-0162 at p. 5, 379 So. 3d at 44.

9

The first step in determining the validity of a plea agreement under contract law is to determine whether a contract was formed in the first place through offer and acceptance. Givens, 99-3518 at p. 14, 776 So. 2d at 455; see La. C.C. art. 1927. The party demanding performance of a contract has the burden of proving its existence. In the context of plea bargains, a defendant may demand specific performance of the State's promise if he can show the parties reached an agreement, he performed his part of the agreement, and in doing so, he relinquished a fundamental right. Givens, 99-3518 at p. 15, 776 So. 2d at 455.

Herein, the State offered the defendant a maximum concurrent sentence of eighteen years and the promise not to file a habitual offender bill against him in exchange for the defendant's guilty plea, and the defendant expressly agreed to those conditions in exchange for his guilty plea. Thereafter, but still within the plea colloquy and prior to the trial court accepting the defendant's plea, the State added the condition that if the defendant did not appear as scheduled for sentencing, it would seek the maximum sentences for the defendant's respective charges and would further file a habitual offender bill. Following the State's insertion of this added condition, the only response given by the defendant was to the court's inquiries of whether he had any questions he would like to ask the court, the State, or his attorney, whether he was satisfied with the representation of his attorney, and whether the sentencing delay stipulations recited by the court were "all right," to which he responded "No, sir," "Yes, sir," and "Yes, sir," respectively.

As recognized in Rider, a defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid. Rider, 23-0162 at p. 5, 379 So. 3d at 44 (citing Florida v. Nixon, 543 U.S. 175, 187-88, 125 S.Ct. 551, 560, 160 L.Ed.2d 565 (2004)). Tacit is defined as implied or indicated, as by an act or silence, but not actually expressed. Tacit, Merriam-Webster.com Dictionary,

https://www.merriam-webster.com/dictionary/tacit. (last visited October 25, 2024). Herein, although the defendant expressly agreed to plead guilty to the specified charges under the condition that he receive sentences of either 10 years or 18 years on the respective charges, it cannot be said that the defendant expressly agreed to the condition that he would accept a greater sentence than the respective 10- and 18-year sentences in the event he failed to appear as scheduled for sentencing. Cf. State v. Heard, 16-0012, p. 4 (La. App. 1st Cir. 7/12/16), 2016 WL 3685357, at *2 and State v. Stewart, 03-976, pp. 7-8 (La. App. 5th Cir. 12/20/03), 862 So. 2d 1271, 1276-77 (wherein the defendants answered "Yes, sir," when asked if they understood that their sentence would be different if they failed to appear as scheduled for sentencing during their respective guilty plea colloquies).

While the defendant's failure to object or to question the condition and consequences added by the State could be viewed as consent, such consent, at most, was implicit or tacit; it was not express. Consequently, we find merit in the defendant's first assignment of error, as the record fails to establish that the defendant validly agreed to the imposition of sentences greater than the respective 10- and 18-year concurrent terms or to the filing of a habitual offender bill of information if he failed to appear for sentencing.

Accordingly, as the plea agreement did not provide for the defendant to receive any sentence greater than 18 years or for the filing of a habitual offender bill of information, we hereby set aside the defendant's conviction and sentence and remand this case with instructions that the trial court allow the defendant an opportunity to withdraw his guilty plea to the instant offense. In so holding, we pretermit consideration of the defendant's second assignment of error as moot.[6]

---

[6] Curiously, while the defendant challenges the imposition of consecutive sentences as being excessive in his second assignment of error, he does not argue that his guilty plea is constitutionally infirm because the plea agreement contained a condition that all sentences imposed under docket numbers 1900133, 1900176, and 2101766 be served concurrently. It is recognized that a challenge of his guilty plea on that basis would have merit, as there is nothing

11

**CONVICTION AND SENTENCE SET ASIDE; REMANDED FOR FURTHER PROCEEDINGS TO ALLOW THE DEFENDANT THE OPPORTUNITY TO WITHDRAW HIS GUILTY PLEA.**

---

in the record before us that reveals an express or implied modification or revocation of that condition. See State v. Manchester, 545 So.2d 528, 529-30 (La. 1989); State v. Cheatham, 44,247, pp. 6-8 (La. App. 2d Cir. 5/13/09), 12 So. 3d 1047, 1051-52. However, as the defendant does not raise this fact as error on appeal, our ruling herein is limited to the error of which the defendant complains. See State v. Collins, 14-1461 (La. 2/27/15), 159 So. 3d 1040 (per curiam).

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2024 KA 0142

**STATE OF LOUISIANA**

**VERSUS**

**MONTREY TREVELL PAIGE**

**PENZATO, J., concurring.**

I respectfully concur in this matter. The transcript of the plea colloquy reflects that the defendant acknowledged and agreed to the stipulation that his ankle monitor was to remain, there would be no new criminal activity, and he was to remain at home. However, there is no acknowledgment by the defendant that he consented to or understood that if he did not appear for his sentencing, the State would have the right to ask for the maximum forty-year sentence and would file a habitual offender bill.