# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Griffin, J.:**

2025-O-01449    IN RE: JUDGE SHEVA SIMS

SUSPENSION IMPOSED. SEE OPINION.

Weimer, C.J., concurs in part and dissents in part and assigns reasons.
McCallum, J., dissents in part and assigns reasons.
Penzato, J., concurs in part and dissents in part and assigns reasons.

**GRIFFIN, J.**[*]

This matter arises from the recommendation of the Judiciary Commission of Louisiana ("the Commission") that Judge Sheva Sims be suspended without pay for one year for acting in an impatient and condescending manner towards a litigant, misusing a court-owned vehicle, improperly advocating for a party during an eviction proceeding, and engaging in a pattern of failing to follow the law. After considering the facts, circumstances, and applicable law, we reject the recommendation of the Commission and impose a suspension of nine months without pay.

## FACTS AND PROCEDURAL HISTORY

Judge Sims became a judge of the Shreveport City Court, Parish of Caddo, effective December 2011.[1] An investigation arose from numerous complaints filed by litigants, anonymous complainants, and retired Justice E. Joseph Bleich in his capacity as supernumerary judge pro tempore of Shreveport City Court. The Commission's Notice of Hearing alleges that Judge Sims violated Canons 1, 2, 2(A), 2(B), 3(A)(1), 3(A)(2), 3(A)(3), 3(A)(4), 3(A)(6), and 3(B)(1) of the Code of Judicial Conduct, as well as Article V, § 25(C) of the Louisiana Constitution based on the following counts: (1) was rude and disrespectful towards a property manager in an

---

[*] Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

[1] Judge Sims was previously suspended in 2015 for improperly holding a prosecutor in contempt for conduct that was not contemptuous and *sua sponte* impermissibly dismissing fifteen criminal cases without the legal authority to do so. *See In re Sims*, 14-2515 (La. 3/7/15), 159 So.3d 1040.

eviction proceeding and improperly denied the eviction; (2) failed to be patient and courteous to a property manager in another eviction proceeding; (3) used a court-owned vehicle for her personal commute for several weeks and twice had city marshals buy gasoline for the vehicle; (4) independently obtained documents relative to an eviction proceeding, introduced them into evidence, and used the documents to question and discredit a witness thereby creating an appearance of advocacy; (5) failed to follow the Code of Criminal Procedure by ordering that defendants charged with crimes of violence be released on their own recognizance, granted a defendant credit for time he had served prior to the date of the offense, and issued a bond order which did not include a mandatory condition of release; and (6) exhibited rude, abrasive, and demeaning behavior towards litigants, court staff, and colleagues and failed to cooperate with other court officials in the administration of court business.

The Hearing Officer found misconduct by Judge Sims on Counts (1), (3), (4), (5), and paragraph three of Count (6). The Commission agreed except as to the Hearing Officer's finding of misconduct in part on Count (6) and found Judge Sims to be in violation of the Code of Judicial Conduct and Article V, §25(C) of the Louisiana Constitution as to Counts (1), (3), (4), and (5).[2] The matter was set on this Court's docket for oral argument under LASC Rule XXIII, § 14.

The following facts were presented to the Commission:

## DEMEANOR

Judge Sims presided over an eviction hearing in *Monarch Realty & Management v. Jermaine O'Neal*. Megan Everett, who is not a lawyer, appeared in her capacity as the property manager for Monarch Realty. Ms. Everett stated Mr. O'Neal was late paying rent, had an unauthorized pet, and also owed "court fines" the realty company had to pay due to the condition of the property. Judge Sims cut

---

[2] As the Commission found Counts (2) and (6) unproven, the Commissioners did not address those counts in their briefing.

2

Ms. Everett off while she was speaking and asked what she meant by "court fines." Ms. Everett explained the fines were imposed by Shreveport Environmental Court, and Judge Sims, on multiple occasions, distinguished the Shreveport Environmental Court from the Shreveport City Court. Ms. Everett further explained a notice to vacate was given despite the lease agreement containing a waiver provision. After some back and forth between Mr. O'Neal and Ms. Everett about whether a pet deposit was received, Judge Sims interrupted to point out the notice to vacate did not list each alleged lease violation. While Ms. Everett was trying to explain a second page was stapled to the notice, Judge Sims again cut her off in a condescending manner[3] and at the conclusion of which remarked, "You['re] making

---

[3] Judge Sims: "Hold on one second. Hold on one second. On the notice that you all provided, according to you all on April the 21st, it doesn't denote which lease violations were alleged to have been committed."

Ms. Everett: "I have copies of each violation that has been given to him."

Judge Sims: "Did you hear what I said?"

Ms. Everett: "Ma'am?"

Judge Sims: "Did you hear what I said?"

Ms. Everett: "It didn't say –"

Judge Sims: "Were you listening to me?"

Ms. Everett: "Yes ma'am. You said I didn't specifically write down on the notice to vacate of the lease violations he received."

Judge Sims: "Right. On your notice it has lease violations where it is marked, there's an X in the box. And then underneath, there's an explanation where you're supposed to list specifically what the violations are so the tenant would know."

Ms. Everett: "Yes, ma'am, I did –"

Judge Sims: "– but was that –"

Ms. Everett: "– staple the lease violation to the notice to vacate when it was given to him."

Judge Sims: "You going to answer what you want to answer, or are you going to answer my questions? Ma'am? Ma'am?"

Ms. Everett: "Yes ma'am."

Judge Sims: "On the lease five-day notice you have dated April 21st of this year, you did not list the violations on there, correct?"

Ms. Everett: "No, ma'am."

this longer than it needs to be. Everybody here has somewhere to go. As a matter of fact, have a seat. Let me take the next case."

After hearing approximately twenty other cases on the docket, Judge Sims called the *O'Neal* case back up and resumed her questioning including, whether the issues on the property were resolved as to the Shreveport Environmental Court fines. Ms. Everett explained she did not attend the Environmental Court proceeding because she was in City Court for an eviction instead. Judge Sims asked why Ms. Everett did not call Environmental Court to say she had an obligation in City Court to which Ms. Everett responded she had the dates confused. Judge Sims clarified that Ms. Everett did not go to Environmental Court because she was unaware that she needed to be there instead of City Court. After Ms. Everett confirmed this, Judge Sims tersely stated, "Eviction denied. Next case."

As Ms. Everett was leaving, Mr. O'Neal asked Judge Sims if he needed to pay the outstanding rent for May, and Judge Sims yelled for Ms. Everett to return to the courtroom. Ms. Everett responded that Mr. O'Neal could still pay the rent, and Judge Sims told Mr. O'Neal, "She said she'll accept it. Give it to her now." Ms. Everett explained that, per company policy, she was not allowed to receive rent payments outside of the office. Judge Sims cut her off and stated, "The order of the court is for him to tender it to you now." When Ms. Everett asked if the payment included late fees, Judge Sims responded, "I don't know. I'm not looking at it," and insisted Ms. Everett take the money and figure it out later.

---

Judge Sims: "What was the ledger –"

Ms. Everett: "But it was stapled with –"

Judge Sims: "I heard you the first time. I don't have a hearing problem. Would you like to say it one more time, ma'am?"

Ms. Everett: "No."

4

**MISUSE OF COURT VEHICLE**

Shreveport City Court purchased a vehicle for use by court personnel. There was no written policy governing the use of the vehicle but there was a general understanding that the vehicle was to be used by judges and employees of the Clerk of Court's Office for court-related business[4] – not personal use. The vehicle was typically kept in a parking spot at the courthouse. The customary policy was for a judge or employee to retrieve the keys and sign a log indicating who had checked out the vehicle, the time of check out, where driven, and the time returned. Judge Sims used this vehicle for several weeks, commuting between her home and the courthouse, as her own vehicle was being repaired and she did not have other transportation. Judge Sims parked the vehicle in her parking spot while at the courthouse and drove the vehicle home overnight and on weekends.

A Fuelman card is assigned to each City of Shreveport-owned vehicle and is used to procure gasoline from pumps accessible only to city workers. Officers with the Shreveport City Marshal's Office used Fuelman cards assigned to the marshal's office to procure gasoline for the court-owned vehicle on two occasions. The vehicle had no gasoline in it when Judge Sims first used it, so she called then-Chief Deputy Marshal James Jefferson for assistance. Deputy Jarvis Armington was sent to assist Judge Sims and met her at the city gas pumps. When the Fuelman card for the vehicle could not be located,[5] Chief Deputy Jefferson authorized Deputy Armington to use his Fuelman card to fill up the vehicle. At this time, Judge Sims offered to pay for the gasoline, but Chief Deputy Jefferson said it was too difficult to determine the equivalent dollar amount as the fuel in the city pumps was purchased in bulk. He

---

[4] This included picking up supplies, making deposits at the bank, and judges occasionally using the vehicle to attend meetings or conferences.

[5] Chief Deputy Jefferson testified he later discovered the vehicle had a Fuelman card associated with it but wasn't aware of why it wasn't located in the vehicle itself.

recalled other occasions where Judge Sims offered to pay but told her it wasn't necessary again citing the difficulty in calculating the dollar amount. Subsequently, Judge Sims later asked Deputy Troy Jackson to fill up the vehicle using a Fuelman card of the Marshal's Office. Judge Sims claimed that Chief Deputy Jefferson authorized Deputy Jackson to fill up the vehicle, but Chief Deputy Jefferson testified he was only aware of the earlier occasion involving Deputy Armington. Approximately seventeen days after Judge Sims began using the vehicle, the Marshal's Office notified the Shreveport City Court that it would no longer accommodate any future requests for use of the Fuelman cards of that office.

### IMPROPER ADVOCACY

Judge Sims presided over an eviction hearing in *TTA Capital, LLC v. Schkeiry Williams*, wherein plaintiff property owner sought to evict defendant lessee, Ms. Williams, for nonpayment of rent. The lease-to-own agreement at issue included provisions making the lessee financially responsible for any and all necessary repairs. Despite these provisions, Ms. Williams (representing herself *pro se*) stopped making rent payments because a tree had fallen on the house. Ms. Williams claimed she told an employee of the property owner, Lynette Maxfield, about this incident. Ms. Williams also claimed that the Shreveport Department of Property Standards ("Property Standards") spoke to Ms. Maxfield about the fallen tree, but plaintiff's counsel said he was not aware of such contact. Judge Sims continued the hearing to allow plaintiff's counsel to obtain additional information but further stated on the record: "I know you all can contact Property Standards. If not, I'll have my office do it."

At the subsequent hearing, Judge Sims heard testimony from Ms. Maxfield and Ms. Williams. Judge Sims then referred to photographs of the property taken by Property Standards and said she had acquired them herself. She instructed the deputy marshal to show them to the parties and clarified, "And for the record, so the

6

record is clear, I've acquired those on my own from the Property Standards Division."[6]  She then admitted the photographs into evidence.  After hearing testimony, Judge Sims brought Ms. Maxfield back on the stand and questioned her in an attempt to impeach her prior testimony with documents from Property Standards that do not appear in the record and which neither Ms. Williams nor plaintiff's counsel had ever seen.  Judge Sims eventually remarked, "I provided the pictures.  I provided the document…."  Ultimately, Judge Sims ruled against Ms. Williams.

## FAILURE TO FOLLOW THE LAW

The Notice of Hearing alleges Judge Sims failed to follow three specified provisions of the Louisiana Code of Criminal Procedure.

A defendant who has been arrested for a crime of violence or domestic abuse battery "shall not be released on his personal undertaking or with an unsecured personal surety."  La. C.Cr.P. art. 321(C)(1) and (5).  Notwithstanding this clear provision of the Code of Criminal Procedure, Judge Sims ordered that ten defendants arrested for crimes of violence[7] be released on their own recognizance ("ROR") between 2018 through 2019.

"No defendant shall receive credit for any time served prior to the commission of the crime."  La. C.Cr.P. art. 880(C).  Nevertheless, Judge Sims granted a defendant who pled guilty to certain traffic offenses credit for time he served before the date of those offenses.  When the prosecutor attempted to bring this error to Judge Sims' attention by stating the tickets were issued after the defendant's incarceration,

---

[6] The header of the printed pages of the photographs show they were printed from MyPermitNow.org on July 5, 2022, at 1:16 p.m., which would have been directly after the court's morning session during which the first hearing took place.

[7] A crime of violence "means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon."  La. R.S. 14:2

Judge Sims simply responded, "I understand. I see that. Thank you." Approximately one week later, Judge Sims became aware of the improper sentence, vacated it, and entered a new sentence.

A court is required to include as condition of release on bail that a person charged with a second or subsequent DWI offense shall "install an ignition interlock device on any vehicle which he operates." La. C.Cr.P. art. 320(C). Judge Sims issued a bond order for such a defendant which did not include an order to install an ignition interlock system. When the error was brought to Judge Sims' attention, she corrected it.

## DISCUSSION

The issue before this Court is whether we should accept the recommendation of the Commission and suspend Judge Sims for one year without pay. Article V Section 25(C) of the Louisiana Constitution vests this Court with exclusive and original jurisdiction in judicial disciplinary proceedings and provides substantive grounds for disciplinary actions against a judge. This Court "therefore has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission." *In re Benge*, 09-1617, pp. 26-27 (La. 11/6/09), 24 So.3d 822, 838. The Court has adopted the Code of Judicial Conduct, which supplements the grounds for disciplinary actions involving judges. Before discipline can be imposed, charges against a judge must be proven by clear and convincing evidence. *In re Hunter*, 02-1975 p.3 (La. 8/19/02), 823 So.2d 325, 328.

### DEMEANOR

The Commission determined that Judge Sims, in haste to get through a busy docket, was unnecessarily condescending and exhibited a lack of patience with Ms. Everett, who remained respectful throughout the proceeding. Judge Sims' explanation for her actions was that Ms. Everett was nonresponsive to her questions,

8

and Judge Sims wanted to be efficient with her docket. Judge Sims elaborated that she thought it best to handle other cases first and allow Ms. Everett an opportunity to view other litigants but eventually conceded she could have handled the matter better. Judge Sims stated her reason for denying the eviction was based on Ms. Everett making inconsistent statements throughout her testimony, however, the Commission found these after-the-fact attempts to justify her demeanor and ruling were not supported by the record.[8] We agree.

Judge Sims failed to maintain "high standards of conduct so that the integrity and independence of the judiciary may be preserved," "respect and comply with the law … in a manner that promotes public confidence in the integrity and impartiality of the judiciary," and "be patient, dignified, and courteous to all litigants" with whom she interacts in an official capacity in violations of Canons 1, 2(A), and 3(A)(3) of the Code of Judicial Conduct. *See also* La. Const. art. V, §25(C) (discipline may be imposed to sanction "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute"). "While a judge may be forceful and stern, he or she must remain respectful and in control of his or her temper – hostile, demeaning or humiliating language is never warranted." *In re Bowers*, 98-1735, p. 14 (La. 12/1/98), 721 So.2d 875, 884. Notwithstanding that "a judge's patience is tested when simultaneously confronted with crowded dockets to be managed and countless difficult decisions to make," "judges must strive to be patient in the face of these challenges." *In re Ellender*, 09-0736, p. 12 (La. 7/1/09), 16 So.3d 351, 358.

---

[8] Judge Sims refused to admit she ordered Ms. Everett to accept the rent payment from Mr. O'Neal instead contending that she "ordered the defendant to tender the payment," but Ms. Everett "doesn't have to accept it." The Commission found this assertion disingenuous in light of Judge Sims' position of authority and the words directed to the parties.

## MISUSE OF COURT VEHICLE

The Commission determined that Judge Sims' use of the court-owned vehicle for several weeks to commute to and from work, retention of the vehicle in the evenings and on weekends, and her acquisition of fuel through the Marshal's Office constituted an impermissible personal use of public assets. *See* Code of Judicial Conduct Canon 1, 2(A), 2(B), 3(B)(1); La. Const. art. V, § 25(C). Judge Sims agreed the vehicle should only be used for court business but maintained that because she did not have alternate transportation, her extended use of it to commute was "in connection with the discharge of [her] judicial function." She believed her only other alternative was to walk which, she had done before, but she was told by the deputy marshals it was not safe as she had prior security issues of people approaching her on the street. Judge Sims further asserted she did not use the vehicle for personal errands when she drove it home on evenings and weekends. However, the Commission found that Judge Sims gave inconsistent testimony at first responding she did not purchase fuel for the vehicle but later claimed she did. The Commission rejected what it considered a false dichotomy presented by Judge Sims based on the incorrect premise that the commute is a judicial function. It further characterized Judge Sims' appeal to the serious security risks faced by judges as a belated and gratuitous attempt to justify her personal use of the vehicle. The Commission concluded Judge Sims abused her judicial position by using the court-owned vehicle and having the Marshal's Office supply the fuel. We disagree.

Judge Sims testified she only started using the court-owned vehicle after deputy marshals advised her against walking to court given she was previously accosted on her commute. Chief Deputy Jefferson confirmed that Judge Sims offered reimbursement for the gasoline she procured through use of deputy marshals' Fuelman cards and that he declined this reimbursement. Under these unique circumstances, we therefore find Count (3) unproven.

10

**IMPROPER ADVOCACY**

The Commission determined that Judge Sims directly requested the documents from Property Standards or directed someone to obtain them on her behalf and that the totality of her actions reflected improper advocacy. *See* Code of Judicial Conduct Canon 1, 2(A), 2(B), 3(A)(4), and 3(A)(6); La. Const. art. V, §25(C). Despite the multiple statements Judge Sims made on the record at the hearing that she was responsible for obtaining the photographs and documents from Property Standards (which she also confirmed in her initial response to the anonymous complaints filed against her contending she took judicial notice of them), she asserted at the Commission hearing that she did nothing to obtain them herself, stating, "I don't recall doing anything specifically … I didn't ask for them." She asserted the Property Standards documents simply appeared in her office in an envelope her assistant gave her. Judge Sims attempted to clarify her comments on the record at the eviction hearing by stating she meant she provided them "from the packet that was delivered to [her] office" and "obtained them [herself] from [her] assistant." When asked why she felt it proper to introduce and use documents that had simply appeared in her office from an unknown source, Judge Sims gave circular and evasive responses. Judge Sims also testified to the Commission there was a cover letter with the documents indicating they were from Property Standards, yet no such letter is in the record. The Commission did not find this testimony credible. The Commission concluded that Judge Sims went too far in attempting to assess Ms. Maxfield's credibility by using evidence she obtained herself to conduct a cross-examination thus appearing to act as an advocate for the defendant, Ms. Williams. The Commission further found the fact that Judge Sims ultimately ruled against Ms. Williams is of no moment. We agree.

Judge Sims failed to perform her duties as an unbiased and neutral arbiter undermining the integrity of the judicial system. *See In re Fiffie*, 24-0976, pp. 16-

11

17 (La. 10/25/24), 395 So.3d 738, 749; *In re Foret*, 14-0526, pp. 6-7 (La. 5/23/14), 144 So.3d 1028, 1032. Her after-the-fact explanations to the Commission are wholly lacking in credibility when weighed against the evidence before us. Judges must consider the evidence that the parties present to them, not that they have acquired on their own.

### FAILURE TO FOLLOW THE LAW

The Commission determined Judge Sims' release of several defendants charged with domestic abuse battery or violent crimes on their own recognizance was in derogation of the clear language of La. C.Cr.P. art. 321(C). Judge Sims offered various justifications that these defendants were released due to medical issues, issues with the jail, or because the prosecutor had reached an agreement with defense counsel to dismiss the charges upon completion of a diversion or probation program.[9] When asked why the minutes do not reflect these circumstances, Judge Sims asserted the minutes were frequently incorrect or inaccurately recorded. It was Judge Sims' interpretation that so long as a bond is initially set, it is not a violation of La. C.Cr.P. art. 321(C) if there is a subsequent ROR. The Commission concluded Judge Sims' justifications to be irrelevant as the plain language of the statute does not support such an interpretation.

The Commission determined that Judge Sims' granting credit for time a defendant served before the date of his instant charged offenses was in derogation of the clear language of La. C.Cr.P. art. 880(C). Judge Sims claimed she did not hear the prosecutor's attempt to bring this error to her attention as others present were talking over each other and giving her documents to sign. The Commission noted the recording of the proceeding does not bear this out and points to Judge

---

[9] Jasmine Cooper, a lawyer who previously worked in the Shreveport prosecutor's office, testified about the apparent common practice in Shreveport City Court wherein once a bond was initially set, sometimes defense counsel and the prosecutor would come to an agreement if, for example, the prosecutor found a case did not have the requisite probable cause. Nonetheless, this common practice is not a defense to failure to follow clear statutory law. *See In re Elloie, infra.*

12

Sims' remarking, "I understand. I see that. Thank you." Judge Sims could not recall how she later learned the sentence was improper and when she corrected it, her method of doing so did not appear in the minutes. Again, Judge Sims suggested the minutes might not be correct.

The Commission determined Judge Sims' failure to issue a bond order for the installation of an ignition interlock system for a defendant charged with a second DWI was in derogation of the clear language of La. C.Cr.P. art. 320(C). The Commission concluded that Judge Sims merely blamed the error on the failure of her new judicial assistant to draft the order properly. Rather than take full responsibility, Judge Sims stated: "I just do it myself. So it requires me to do extra stuff that falls under the purview of her job…."

Judge Sims demonstrated a repeated practice of failing to follow the clear language of La. C.Cr.P. arts. 321(C), 880(C), and 320(C). "A judge may be found to have violated La. Const. Art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error." *In re Quirk*, 97-1143, pp. 11-12 (La. 12/12/97), 705 So.2d 172, 180-81. "[A] pattern of repeated legal error (although not necessarily the same error) over a period of time can constitute judicial misconduct, regardless of whether the errors were made in bad faith or were egregious in nature." *Id.*, 97-1143, p. 8, 705 So.2d at 178. "The defense that a long-standing procedure was utilized cannot prevail when that procedure is in direct contravention to express written statutory law, about which there can be no misunderstanding or confusion." *In re Elloie*, 05-1499, pp. 26-27 (La. 1/19/06), 921 So.2d 882, 900.

## DISCIPLINE

Based on these violations, discipline is required. In imposing discipline, we are guided by the following: (a) whether the misconduct is an isolated instance or

evidences a pattern of misconduct; (b) the nature, extent, and frequency of occurrence of the acts of the misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in her private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify her conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited her position to satisfy his personal desires. *In re: Chaisson*, 549 So.2d 259, 266 (La. 1989).

*(a) whether the misconduct is an isolated instance or evidences a pattern of misconduct and (b) the nature, extent, and frequency of occurrence of the acts of the misconduct*

The nature of the misconduct in this proceeding evidences a wide range of frequent and persistent overreach and excess in continuation of the same type of indifference towards the limits of judicial authority for which Judge Sims was previously disciplined.

*(c) whether the misconduct occurred in or out of the courtroom and (d) whether the misconduct occurred in the judge's official capacity or in her private life*

All of the misconduct at issue occurred in Judge Sims' official capacity as a judge occurring in or adjacent to the courtroom in course of handling criminal and eviction matters.

*(e) whether the judge has acknowledged or recognized that the acts occurred and (f) whether the judge has evidenced an effort to change or modify her conduct*

Judge Sims displayed a consistent reluctance to accept or recognize her misconduct responding to Commission questioning with after-the-fact justifications and rationalizations, often shifting blame on to others. Her testimony revealed a lack of credibility in light of the record evidence. We further agree with the Commission that Judge Sims offered halfhearted acknowledgement of her misconduct

14

unconducive to a true appreciation of why her actions were improper in a way that will ensure there is no future recurrence. *See In re Free*, 16-0434, p. 53 (La. 6/29/16), 199 So.3d 571, 603; *In re Sassone*, 07-0651, pp. 28-33 (La. 6/29/07). 959 So.2d 859, 880; *In re Lee*, 06-0454, p. 19, 933 So.2d at 748.

*(g) the length of service on the bench*

Judge Sims has served as a judge since December 2011. This prolonged tenure is now an aggravating factor in light of her prior complaints and discipline.

*(h) whether there have been prior complaints about this judge*

This Court suspended Judge Sims for thirty days without pay in 2015 for improperly holding a prosecutor in contempt for conduct that was not contemptuous and impermissibly dismissing fifteen criminal cases without the legal authority to do so. *See In re Sims*, 14-2515 (La. 3/7/15), 159 So.3d 1040. At the time Judge Sims had been on the bench for less than one year yet already started to display misconduct similar to the instant proceeding. The following year Judge Sims entered into a Deferred Recommendation of Discipline Agreement with the Commission wherein she was admonished for habitually arriving late to court and management issues with the Marshal's Office.

*(i) the effect the misconduct has upon the integrity of and respect for the judiciary*

The cumulative effect of Judge Sims' misconduct had a significant negative impact on the integrity of and respect for the judicial system. Judge Sims exhibited impatience and condescension towards a litigant who remained respectful and rendered a ruling that appeared to be against the weight of the evidence implicating issues of impartiality. *See In re Bowers*, 98-1735, p. 14 (La. 12/1/98), 721 So.2d 875, 884 ("an appearance in [a judge's] courtroom may be a litigant's or witness' only exposure to the judicial system" such that demeaning or humiliating language by a judge "reflects poorly on the image of our system of justice"); *In re Cresap*, 06-1242, pp. 25-26 (La. 10/17/06), 940 So.2d 624, 639-40. Judge Sims abandoned her

15

role as a neutral arbiter when she engaged in an independent fact-finding investigation, obtained and introduced evidence not provided by the parties, and created an appearance of bias in favor of the defendant when questioning her credibility of a witness on an inconsequential issue. *See Williams v. Pennsylvania*, 579 U.S 1, 15-16 (2016) ("An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements[.]"); *In re Fiffie*, 24-0976, pp. 16-17, 395 So.3d at 749. Judge Sims engaged in a pattern of failing to apply clear and determined provisions of the Louisiana Code of Criminal Procedure. Most seriously, she granted ROR to defendants charged with domestic abuse battery or crimes of violence. The failure to follow and apply clear statutory law "can only cast the judiciary as a whole into disrepute." *In re Sassone*, 07-0651, p. 29, 959 So.2d at 879.

### *(j) the extent to which the judge exploited her position to satisfy her personal desires*

We find the evidence does not support Judge Sims exploited her position for personal gain.

"[T]he discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances." *In re Ellender*, 04-2123, p. 13 (La. 12/13/04), 889 So.2d 225, 233. Given the varied forms of misconduct in this matter, a direct comparison to past disciplinary cases is difficult. A common thread which runs through the gamut of Judge Sims' violations is a persistent lapse into informalities, overreach, and lack of decorum ostensibly rooted in her frustrations with managing a sizeable docket. Nonetheless, a judge must unflinchingly adhere to the high standards of the Code of Judicial Conduct. Judge Sims' repeated failure to do so – and her

16

subsequent responses seeking to evade, rationalize, or obfuscate the issues – undermined the integrity of the judicial system and violated the public trust. *See In re Best*, 15-2096, p. 14 (La. 6/29/16), 195 So.2d 460, 468 ("the primary purpose of the Code of Judicial Conduct is the protection of the public rather than to simply discipline judges"). Even were we to conclude Judge Sims did not act wholly in bad faith, this would not absolve her misconduct. *See In re Hunter*, 02-1975, p. 16, 823 So.2d at 336 ("a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute"); *see also Chaisson*, 549 So.2d at 267 ("'good faith' is a mitigating factor, not an affirmative defense") (citing *Matter of Laster*, 404 Mich. 449, 274 N.W.2d 742 (1979)). Accordingly, this Court imposes a suspension of nine months without pay and reimbursement of costs to the Commission in the amount of $5,801.28.[10]

## DECREE

For the foregoing reasons, it is ordered that Judge Sims shall be suspended from office without salary for nine months. Judge Sims is also ordered to pay the Commission $5,801.28 in hard costs.

**SUSPENSION IMPOSED**

---

[10] We reduce the Commission's request for reimbursement of $5,801.28 in hard costs proportional to the three of the six counts we determine were proven.

17

# SUPREME COURT OF LOUISIANA

## No. 2025-O-01449

## IN RE SHEVA SIMS

*Judiciary Commission of Louisiana*

**WEIMER, C.J.**, concurs in part and dissents in part.

I agree with the analysis and majority opinion that Judge Sims' violations of the Code of Judicial Conduct warrant discipline.[1] However, I dissent from the discipline imposed as too lenient. I would adopt a one-year period of discipline as recommended by the Judiciary Commission.

This case involves numerous incidents of misconduct by an experienced judge. Most troubling is that, as in her prior discipline case, Judge Sims again demonstrated

---

[1] I part company with my learned colleagues' failure to find Judge Sims abused her judicial position in the use of the court-owned vehicle for her personal use and in having the vehicle fueled and refueled by the Marshall's Office. See **In re Lee**, 06-0454, p. 20 (La. 7/6/06), 933 So.2d 736, 748 ("no amount of judicial experience whatsoever is needed to know" a judge's obligations with regard to public versus personal funds); Code of Judicial Conduct Canon 2(B) ("judge shall not lend the prestige of judicial office to advance the private interest of the judge"); see also **In re Alford**, 07-1893, p. 14 (La. 2/15/08), 977 So.2d 811, 820 ("using court employees paid with public funds for personal tasks is a failure to maintain standards of conduct that preserve the integrity of the judiciary"). As observed by the Commission, Judge Sims appeared disingenuous in asserting she had no choice but to risk her safety or use a publicly funded asset because she could not afford a rental car due to the exorbitantly expensive repairs to her luxury vehicle, whereas most average citizens, including other state and court employees, must arrange for their own transportation in commuting to work. When asked by the Commission whether she agreed it was reasonable to conclude that she "intentionally or unintentionally employed the prestige associated with [her] position as a judge to get the benefit of [the] vehicle," Judge Sims responded, "I understand that some may perceive that and some may not perceive it that way. I understand that is a possibility."

As the Judiciary Commission noted:

> Most average taxpaying citizens, including other state and court employees and those who earn much less than a judge, must arrange and pay for their own transportation to and from work in all variety of challenging situations.
>       When asked whether, from the perspective of the average citizen, it is fair or reasonable to use the court vehicle for her commute for serveral weeks, Judge Sims stated she is "concerned about the citizens and their perspective on the judges for us to be fair and utilize anything for the court for court purposes ...[a]nd that is not something at this juncture that I would do again." ....

While the fact that the court lacked a clear policy regarding the use of the vehicle mitigates the sanction, the behavior cannot be excused.

a lack of credibility before the Commission, evidencing an unwillingness or inability to recognize her misconduct in any meaningful manner. While every judge accused of misconduct is entitled to provide a vigorous defense, that defense must be truthful, logical, rational, and consistent. As aptly noted by a dissenting member of the Commission:

> [T]hroughout the extant disciplinary proceedings, Judge Sims has at best been evasive in her vain, obtuse attempts to either justify her misconduct, or present mitigating circumstances. Indeed, she has often been outright untruthful. [ ] This action alone demonstrates a contrived reluctance and/or outright inability to accept any responsibility for her authoritarian misconduct, neither of which does her credit.
>
> This matter does not address a single act, an isolated instance of a lapse in judgment, or a good faith misapplication of law by one with little experience or legal training. Judge Sims has been on the bench since December of 2011, and prior to that time she was a practicing attorney for seventeen years. Simply put–she knew better but did not care.

Discipline must address the significance of Respondent's transgressions and lack of forthrightness toward the Commission during its investigation. **In re Foxworth-Roberts**, 25-01127, p. 18 (La. 12/11/25), 424 So.3d 650, 662, reh'g denied, 25-01127 (La. 1/29/26), 425 So.3d 120. The Judiciary Commission serves as the eyes and ears of this court in disciplinary cases, listening to witnesses' testimony and watching those who testify–including the Respondent Judge. Because the Judiciary Commission members listen to and watch the live testimony, they are better able to assess nuances and credibility that are not reflected in a written transcript. I would adopt the Commission's recommendation to impose a one-year suspension without pay; therefore, I respectfully dissent from the sanction imposed by the majority.

# SUPREME COURT OF LOUISIANA

## No. 2025-O-01449

## IN RE: JUDGE SHEVA SIMS

Judiciary Commission of Louisiana

**McCALLUM, J., dissents in part and assigns reasons.**

I join with Chief Justice Weimer and Justice Penzato and would adopt their reasons as my own, except I would have imposed a harsher sanction than even they suggest.

# SUPREME COURT OF LOUISIANA

## No. 2025-O-01449

## IN RE: JUDGE SHEVA SIMS

Judiciary Commission of Louisiana

**PENZATO, Justice Pro Tempore**, dissenting in part.

I disagree with the majority's conclusion that Count (3), relative to misuse of the court-owned vehicle, was not proven by clear and convincing evidence. It is undisputed that Judge Sims used a court-owned vehicle for several weeks to commute to and from work, and had the Marshal's Office use Fuelman cards assigned to it to fill the car with gas. I find this was an impermissible personal use of public assets and abuse of her judicial position. For this and the other misconduct, which I agree with the majority was proven, I would accept the recommendation of the Judiciary Commission and suspend Judge Sims without salary for a period of one year. I would order Judge Sims to reimburse the Commission $7,735.04, based on the allegations I find were proven by clear and convincing evidence.